## CHAPERON v. PORTLAND ELECTRIC CO.

[67 Pac. 928.]

| 41 | 39 |
|----|-----|
| 41 | 344 |
| 41 | 39 |
| 43 | 609 |
| 41 | 39 |
| 48 | 442 |

PLEADING—ALLEGATION OF NEGLIGENCE.

1. A complaint in an action for injuries sustained by reason of defendant's negligence is sufficient when it specifies the particular act which caused the injury, together with a general allegation that such act was negligently done; for the word "negligence," when applied to such an act, is a statement of an ultimate fact, and renders the act actionable: *Cederson* v. *Oregon Nav. Co.* 38 Or. 343, and *Boyd* v. *Portland Elec. Co.* 40 Or. 126, followed.

ELECTRICITY—NEGLIGENT MAINTENANCE OF BROKEN WIRE.

2. A complaint in an action for injury to a horse and vehicle through a broken wire, charged with electricity, suspended over a street, which alleges that defendant negligently permitted such wire to become and remain broken on the street, is not bad for failing to allege that the wire also struck the horse by reason of defendant's negligence.

TRIAL—NONSUIT—SUFFICIENCY OF EVIDENCE.

3. In an action for injuries to a horse and vehicle caused by a broken wire, charged with electricity, suspended over a street, it appeared that the horse attached to the vehicle, after entering a certain street, suddenly fell. The

driver sprang to the ground, and saw a live wire close to the wagon wheel. He did not see the horse come in contact with the wire. The horse, while struggling to his feet, touched the wire, when he again fell, "as if shot." A witness saw sparks thrown from the wire, and, approaching near to it, received a shock from the ground. It was shown that the wire had remained broken for an hour before the accident. *Held,* that the jury was justified in finding that the injury was caused by an electric shock from the wire, and hence it was proper to refuse a motion for nonsuit.

NEGLIGENCE—ELECTRIC WIRES—RES IPSA LOQUITUR.*

4. The fact that injury has resulted from a broken and fallen live electric wire is enough, under the doctrine of *res ipsa loquitur,* to raise a disputable presumption of negligence on the part of the owner of the wire, relieving plaintiff from showing further facts, and excluding the presumption that it was not due to defendant's negligence: *Boyd* v. *Portland Elec. Co.* 40 Or. 126, followed.

NEGLIGENCE—WEIGHT OF EVIDENCE.

5. Where there is any evidence reasonably tending to support the allegations of a complaint, the case should go to the jury, as they are the judges of the value and weight of testimony : as, for example, where, in an action for injuries caused by a broken electric wire, defendant produced evidence tending to show that the wire was broken during the night of the accident by reason of a storm, that the wires and the poles on which they were fastened were inspected once every day, that the best approved appliances for discovering breaks in the wires were used, and that on the night in question such tests were applied every half hour, and that the detector failed to indicate the parting of the wire, it was for the jury to determine whether this evidence excused defendant.

COMPETENCY OF OPINION EVIDENCE.

6. One who purchased property for a special purpose and has used it for that purpose during a considerable time,—say five years,—is competent to estimate the value of such property.

DAMAGES—EVIDENCE INDIRECTLY SHOWING VALUE.

7. In an action for injury to a horse, it was not error to permit plaintiff to prove that since the accident he had hired horses to take the place of the one injured, and that he had paid a certain amount for such hiring, for the testimony tended to establish value.

SHOWING MATTERS OF COMMON KNOWLEDGE—HARMLESS ERROR.

8. In an action for injuries to a horse and vehicle, it was not error to permit proof of the amount of the repairs to the vehicle and harness, without showing that the amount was reasonable, where such amount was small, and concerned matters of common knowledge.

NEGLIGENCE—TIME ALLOWED TO REPAIR.

9. In an action for injuries sustained by reason of a broken wire charged with electricity, an instruction that defendant was entitled to a reasonable time after the fall of the wire to repair it, and would not be liable for an injury occurring before such time, was properly refused, because it was misleading, in not being limited to a case where the wire had broken without defendant's negligence.

*NOTE.—See *Chattanooga Elec. Ry. Co.* v. *Mingle,* 7 Am. Electl. Cas. 594, *Jones* v. *Union Ry. Co.* 7 Am. Electl. Cas. 447 ; *Trenton Pass. Ry. Co.* v. *Cooper,* 7 Am. Electl. Cas. 444, and note, 38 L. R. A. 637, 64 Am. St. Rep. 592.—REPORTER.

From Multnomah:  ALFRED F. SEARS, JR., Judge.

This action was begun by Phillip Chaperon against the Portland General Electric Co. in a justice's court, and taken to the circuit court on appeal.  The defendant is, and was at the time of the accident complained of, engaged in maintaining and conducting upon College and other public streets in the City of Portland a system of poles, and wires extended thereon, for the transmission of electricity; and for cause of action it is alleged "that on the 1st of December, 1899, at about the hour of 3 o'clock A. M. of said day, the plaintiff was, by and through his employe, engaged in driving his horse and bakery wagon upon said College Street, * * and that, without notice of or fault upon the part of plaintiff or his employe, the defendant corporation carelessly, unlawfully, and negligently allowed one of its wires, charged heavily with electricity, to become broken and hang down upon said College Street, and that plaintiff, nor his employe, did not know that said wire was broken, or was hanging down upon said street; and that while said wire of defendant, charged with electricity, was so hanging upon and close to said College Street, the horse and wagon belonging to plaintiff was being driven upon and along said street, and, without fault on the part of plaintiff or his employe, said broken and hanging wire, heavily charged with electricity, came into contact with and struck the horse belonging to plaintiff, and threw said horse to the ground, seriously and permanently injuring said horse, and breaking the shaft of the bakery wagon, and tearing the harness upon the horse, to the damage of the plaintiff in the sum of $150," etc., which is followed by allegations of special damages.  The sufficiency of the complaint was challenged during the trial by objections to the introduction of evidence, a motion for nonsuit, and by a request for an instruction to find in favor of the defendant.                                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Frederick V. Holman.*

For respondent there was a brief over the name of *Bernstein & Cohen,* with an oral argument by *Mr. D. Solis Cohen.*

MR. JUSTICE WOLVERTON, after stating the facts as above, delivered the opinion of the court.

1. We have recently held, after a careful review of the authorities, that it is sufficient, in a declaration upon negligence, to specify the particular act, the commission or omission of which caused the injury, conjoining with it a general averment that it was negligently and carelessly done, or omitted, and that it is unnecessary to go further, and particularize or point out the specific facts going to establish the negligence relied upon: *Cederson* v. *Oregon Nav. Co.* 38 Or. 343 (62 Pac. 637, 63 Pac. 763, 21 Am. & Eng. R. Cas. 624). The proposition has been still more recently sanctioned in *Boyd* v. *Portland Elec. Co.* 40 Or. 126 (66 Pac. 576, 8 Am. Electl. Cas. — —). To the same purpose see *Snyder* v. *Wheeling Elec. Co.* 43 W. Va. 661 (7 Am. Electl. Cas. 473, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922). This results from the significance of the term ''negligence,'' as applied to an act conducing to injury. It so qualifies the act as to render it actionable, and the allegation is treated as a statement of an ultimate fact, rather than a mere conclusion of law.

2. But it is insisted that there is no pertinent allegation that the damage ensued from the negligence of the defendant, or, in other words (employing the language of the counsel), ''it is not alleged that the wire coming in contact with and striking the horse was in any way due to appellant's negligence.'' The act of which plaintiff complained consisted in carelessly and negligently allowing and permitting a wire heavily charged with electricity to become broken and hang down upon a street where plaintiff's horse was being driven, and, without fault of the driver, was brought in contact therewith, whereby injury ensued. Now, to fill the measure of the contention, it was incumbent upon the plaintiff to go further, and affirm that defendant carelessly and negligently brought about or permitted the actual contact. This is the logic of the position, but it is

fallacious in requiring a redundancy of allegation. The essential act of negligence is the primary one of allowing and permitting a wire charged with a subtle and dangerous energy to become broken and hang down upon a public street, where persons lawfully traveling were liable to come in contact with it. In the absence of any contributory act of negligence on the part of plaintiff in bringing about the contact, this becomes the proximate cause, and the injury is indisputably consequential, so that it becomes a matter wholly of supererogation to charge negligence in allowing and permitting the contact, and therefore was not essential to good pleading or the statement of a good cause of action.

3. There is evidence in the record tending to show that John Nagle, an employe of the plaintiff, was engaged in driving the horse attached to a wagon used for the delivery of bread from a bakery, and that just after turning a corner and entering upon College Street the horse suddenly fell. Not being aware of the cause, the driver sprang to the ground, when he observed for the first time a wire hanging close to the wheel of his wagon, emitting sparks and flashes of light. At no time, however, did he see the wire come in contact with the horse. This occurred about 3 o'clock in the morning, while it was yet dark. The night had been stormy and cold, and the streets were wet. The driver went for assistance, leaving the horse where he fell, and it was three quarters of an hour before he regained his feet. In the endeavor to liberate him, and while he was struggling to his feet, the wire was seen to come in contact with him, when he fell again, as described by one of the witnesses, "like he was shot." The witness further states that the wire was throwing off sparks, and at one time he approached so nearly to it as to receive a shock from the ground. The horse was trembling badly when liberated, and seemed to be in great agony. There was blood upon the ground, and he had a cut above his eye, and another on his foot. It was also shown that the wire parted and remained suspended for an hour prior to the accident. Plaintiff having rested, defendant moved for a nonsuit, but without avail, whereupon it produced

evidence tending to show that the night was very stormy, the wind reaching a maximum velocity of 45 miles an hour, and an extreme velocity of 56 miles, which is not extraordinary; that the lines had been in use for seven years, but were of first-class material, and that the wire in question had parted about midway between poles standing 130 feet apart; that the insulation was not broken, except at the point of fracture; that it carried 1,000 volts, but where broken the voltage was much less, being estimated at from 300 to 500; that the wires and the fastenings, and the poles upon which they were carried, were regularly inspected as often as once every other day by a competent electrician; that the company was equipped with the standard and best approved ground detectors, or appliances for detecting or discovering breaks and the grounding of its wires, and that on stormy nights it applied the test every half hour; that upon this occasion the detector did not indicate the parting of the wire, and that the first notice touching its condition came through a member of the police force; that there were no indications as to how the wire came to break; that they sometimes broke of their own accord, but the cause of the present fracture was ascribed either to the crossing of the wires in a gale, or to the blowing of a limb from a tree, or something of the kind across them, causing the current to pass from one to another, thus severing one of them by burning it at the point of contact. Both parties having rested, defendant moved the court to direct a verdict in its behalf, but this was also refused; and error is assigned both as it respects the motion for a judgment of nonsuit and the one to direct the verdict.

In support of its motion for nonsuit, the defendant contends that the proof is insufficient in two aspects to submit the case to the jury: (1) It does not show that the horse was injured by electricity; and (2) it does not show any negligence attributable to the defendant company contributing to the injury. The latest declaration of this court touching the *quantum* of evidence sufficient to carry a case to the jury is found in *Perkins* v. *McCullough*, 36 Or. 146 (59 Pac. 182), wherein Mr. Jus-

tice MOORE says: "The rule is well settled in this state that if there be any evidence, however slight, fairly susceptible of an inference or presumption tending to establish a material allegation of the complaint, it is the duty of the court to deny the motion for a judgment of nonsuit, and submit the question involved to the jury for determination,"—citing all the preceding cases. From the evidence adduced, it is quite manifest that the jury might reasonably have inferred that the horse came in contact with the heavily charged wire, and that the injury complained of was caused by an electric shock. The manner of its falling, the proximity of the wire, the second shock, which was observed by witness to have been produced by contact with the wire, its result, and the effect produced upon the animal, are amply sufficient from which the jury might reasonably and legitimately have drawn the inference that there was contact with the wire in the first instance, and that the injury ensued from electricity.

4. The other question involves the doctrine of *res ipsa loquitur*,—the thing speaks for itself. The only evidence adduced touching the negligence of the defendant in allowing and permitting its wire to become broken and remain suspended upon a public street is of the simple fact that it was found so broken and suspended, and that the injury to the horse ensued; no attempt being made to show the cause of the fracture, or to show any act of commission or omission, carelessly or negligently suffered on the part of the defendant, conducing thereto. Was this sufficient? The defendant was engaged in the transmission and utilization of a subtle and dangerous energy over and along a public street by means of machinery and appliances presumably under its exclusive management and control, because the erection and maintenance of the system by the defendant has been admitted by its pleadings. The dangerous character of the business imposed upon the defendant a very high degree of care in the maintenance of its apparatus and appliances in a secure and safe condition, and thus to guard against the danger of accident to those in the lawful use and enjoyment of the street. Under

these conditions, when the plaintiff had shown the fracture and the unsafe condition in which the wire was found (being suspended upon a public street), and that injury actually ensued therefrom, he was relieved from the necessity of going further and showing such facts as would exclude all other hypotheses or possibility (as that it was not due to the carelessness or unlawful acts of any third person, or other cause), because the most natural and reasonable inference therefrom is that the wire would not have parted or been out of repair, and the accident would not have happened, but for the neglect of duty enjoined upon the defendant; thus taking the case out of the general rule of law that the mere proof of an accident raises no presumption of negligence. The defendant's primary responsibility, because of the high degree of care with which it was charged; the likelihood that the condition would not have existed, in the ordinary course, if due care had been observed; and its exclusive control and management of the system, so that the plaintiff had not adequate or equal facilities with the defendant for ascertaining or showing from whence the real and actual cause of the parting of the wires arose,—conjunctively operated to relieve the plaintiff from the necessity of showing more in the first instance. Such a showing made for him a *prima facie* case, and imposed upon the defendant the burden of making it appear that the unsafe and insecure condition of the wire was not due to any negligence upon its part; and this it could do by showing due observance of that degree of care enjoined upon it, and, if it had succeeded in that respect, it should have been exonerated. This is within the doctrine of *res ipsa loquitur*,—the defendant being required to give such evidence as would exonerate it,—and the plaintiff was relieved from the burden of proving the nonexistence of an adequate explanation or excuse: *Boyd* v. *Portland Elec. Co.* 40 Or. 126 (66 Pac. 576, 8 Am. Electl. Cas. — —) ; Keasbey, Elec. Wires, §§ 271-273; 2 Jaggard, Torts, 864; *Newark Elec. Co.* v. *Ruddy,* 62 N. J. Law, 505 (7 Am. Electl. Cas. 524, 41 Atl. 712) ; *City Pass. Ry. Co.* v. *Nugent,* 86 Md. 349 (38 Atl. 779) ; *Uggla* v. *West End St. Ry. Co.* 160 Mass. 351 (39

Am. St. Rep. 481, 4 Am. Electl. Cas. 389, 35 N. E. 1126);
*Larson* v. *Central Ry. Co.* 56 Ill. App. 263; *Snyder* v. *Wheeling Elec. Co.* 43 W. Va. 661 (7 Am. Electl. Cas. 473, 28 S. E. 733, 39 L. R. A. 499, 64 Am. St. Rep. 922); *Clark* v. *Nassau R. Co.* 9 App. Div. 51 (4 N. Y. Supp. 78, 6 Am. Electl. Cas. 234). The proof submitted by the plaintiff was, therefore, sufficient, tested by the motion for nonsuit.

5. This brings us naturally to the question presented by the motion to direct a verdict. When plaintiff made a *prima facie* case, this imposed upon the defendant the burden of showing, as we have seen, that the fracture of the wire was a condition not due to its fault, or that it used due care in the construction and maintenance of its system, and that the accident was one that could not have been provided against by reasonable foresight and precaution. This burden should not be confused with the burden of making the better case as between the plaintiff and defendant. The plaintiff must have made the better case in the end by the preponderance of evidence. When the defendant produced its evidence, the case rested; and it became a matter for the jury to determine whether it had succeeded, or whether, notwithstanding its attempt at exoneration, plaintiff's *prima facie* case was even yet the stronger and more satisfactory. The questions to be passed upon were of fact, and it was not within the province of the court, under the evidence adduced, to say to the jury, by directing a verdict, that its exoneration had been substantiated, and therefore that plaintiff's *prima facie* case had been overcome. So there was no error in finally submitting the case to the jury: *City Pass. Ry. Co.* v. *Nugent,* 86 Md. 349 (38 Atl. 779).

6. As bearing upon the amount of damages recoverable, the plaintiff testified that he was a judge of horses; that he purchased the injured horse from private parties five or six years prior to the accident, at which time he was six or seven years old, and paid $100 for him,—the price asked; that he had been in constant use every day, and was capable of performing the work, but was worth nothing for the service at the present time. Other testimony indicated more in detail the character

of the injury and its effect upon the usefulness of the animal, and in connection therewith he was exhibited to the jury. There was an objection to the plaintiff's testifying touching the value of the horse, on the ground that he did not show himself to be an expert or especially qualified thereto. This was overruled, and properly so. The horse was purchased for the especial business in which the plaintiff was engaged, and used therein for a considerable length of time, and this was sufficient to qualify him to give his opinion as to value: *Mason* v. *Partrick,* 100 Mich. 577 (59 N. W. 239).

7. Plaintiff further testified that he hired other horses to take the place of the one injured, so as to continue in business; that such service amounted to 14 days for one horse; and that he was put to the expense of $14 therefor. It was insisted that witness should not have been permitted to state the amount paid for the hire of such horses; but the testimony was relevant and competent, as it had some tendency to establish value.

8. Plaintiff also testified that he paid $4 for repairs to the wagon (mending or replacing the broken shaft), and $3.35 for repairing the harness, necessitated by having been cut from the horse while down, in order to release him. Referring to these latter items of damages, defendant's counsel asked the court to instruct the jury as follows: ''I charge you that the plaintiff has failed to prove the reasonable value of any expenses claimed to have been incurred by plaintiff, caused by the injuries alleged in the complaint to the plaintiff's wagon and harness, and therefore you cannot consider any such damages. The testimony of plaintiff that he paid certain sums of money was not followed by any proof as to their reasonable value, and he cannot recover therefor.'' This was refused, and error is assigned. It is probably true that testimony touching sums actually paid for expenses necessarily incurred in repairing damaged property and utensils should ordinarily be supplemented with competent evidence that they were reasonable for the services rendered (*Golder* v. *Lund,* 50 Neb. 867, 79 N. W. 379); but these small items of expense incurred are

matters of such common knowledge that we are disposed to let them rest with the jury, who are fully competent and qualified from their own experience to determine as to their reasonableness.

9. Some instructions were asked and refused, of which defendant complains. One of them was intended to present the same question as the motion to direct a verdict, and hence needs no further notice. Another reads as follows: ''That the defendant was entitled to a reasonable time after the fall of the wire in which to repair it, or to remove it out of the way of persons using the street; and if you find that the injury to the plaintiff occurred before the expiration of such reasonable time, then the plaintiff is not entitled to recover anything in this action.'' The instruction is plainly applicable only to cases where the wire had fallen without the negligence of defendant, or was caused by an act of God, or some force that could not have been provided against by reasonable foresight or precaution, and without such modification would have been misleading. It was therefore properly refused. Other instructions requested were clearly covered by the general charge.

There being no error in the record, the judgment of the court below will be affirmed, and it is so ordered. AFFIRMED.

Decided 3 June, 1902.