[No. 8765. Department Two. October 15, 1910.]

## ANNA E. ABRAMS et al., Respondents, v. THE CITY OF SEATTLE, Appellant.[1]

ELECTRICITY—DEGREE OF CARE—PRESUMPTIONS—RES IPSA LOQUI-TUR—MUNICIPAL CORPORATIONS. A city furnishing electric light for residential uses owes the highest degree of skill, care, and dili-gence, and a presumption of negligence arises, on the principle of res ipsa loquitur, where a private consumer, turning on an electric light in the ordinary manner, is electrocuted by reason of a de-fective ground for the secondary wire, which had come in contact with a primary wire in a high wind.

NEGLIGENCE—PRESUMPTIONS—RES IPSA LOQUITUR—INSTRUCTIONS —BURDEN OF PROOF. Where the doctrine of res ipsa loquitur casts the burden of proof upon a city to overcome the presumption of negligence from the electrocution of a consumer while turning on an electric light in his residence, it is not prejudicial error to in-struct the jury that the fact of the accident casts the burden upon the city to show by a fair preponderance of the testimony that it was not guilty of negligence (RUDKIN, C. J., dissenting).

ELECTRICITY — DEGREE OF CARE — INSTRUCTIONS — MUNICIPAL COR-PORATIONS. In an action for wrongful death from electric shock caused by a defective ground in a secondary wire of a city lighting system, it is not prejudicial error to instruct the jury that every reasonable effort must be made to adopt and use all proper means readily obtainable and known to science, taken in connection with other proper instructions on the subject.

ELECTRICITY—NEGLIGENCE — EVIDENCE — SUFFICIENCY — MUNICIPAL CORPORATIONS. The negligence of the city is for the jury, where a prima facie case was made by the fact that its electric lighting sys-tem electrocuted a private consumer while turning on a light in his residence, and there was evidence of a defective ground of the sec-ondary wire, which became crossed with a primary wire, that such condition had existed several hours without giving notice of its condition, and that the system was not in proper order or not sup-plied with modern appliances.

Appeal from a judgment of the superior court for King county, Ronald, J., entered November 24, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Affirmed.

[1]Reported in 111 Pac. 168.

*Scott Calhoun* and *H. D. Hughes*, for appellant, contended, among other things, that the instruction requiring the defendant to establish want of negligence by a preponderance of the evidence was prejudicial error.   Labatt, Master and Servant, § 834; 1 Jones, Evidence, §§ 174, 182; 1 Wharton, Evidence, § 357; 4 Wigmore, Evidence, §§ 2487-93; 29 Cyc. 599; *Lyles v. Brannon Carbonating Co.*, 140 N. C. 25, 52 S. E. 233; *St. Louis Southwestern R. Co. v. Parks*, 97 Tex. 131, 76 S. W. 740; *San Antonio & A. P. R. Co. v. Robinson*, 73 Tex. 277, 11 S. W. 327; *Field v. French*, 80 Ill. App. 78; *Weigley v. Kneeland*, 18 App. Div. 47, 45 N. Y. Supp. 388; *Scott v. Wood*, 81 Cal. 398, 22 Pac. 871; *Lamb v. Camden etc. R. Co.*, 46 N. Y. 271, 7 Am. Rep. 327; *Whitlatch v. Fidelity & Casualty Co.*, 149 N. Y. 45, 43 N. E. 405; *Tarbox v. Eastern Steamboat Co.*, 50 Me. 339, 345; *Heinemann v. Heard*, 62 N. Y. 448; *Houston v. Brush*, 66 Vt. 331, 29 Atl. 380; *Stewart v. Van Deventer Carpet Co.*, 138 N. C. 60, 50 S. E. 562; *Graves v. Colwell*, 90 Ill. 612.   The court erred in instructing the jury that "every reasonable effort must be made to adopt and use all proper means readily obtainable and known to science for the prevention of accidents."   3 Elliott, Railways, § 1224; *Herzog v. Municipal Electric Light Co.*, 89 App. Div. 569, 85 N. Y. Supp. 712; *Block v. Milwaukee St. R. Co.*, 88 Wis. 371, 61 N. W. 1101; *Steinweg v. Erie Railway*, 43 N. Y. 123; *Mason v. Richmond & D. Co.*, 111 N. C. 482, 16 S. E. 698, 32 Am. St. 814, 18 L. R. A. 845; *Witsell v. West Asheville & S. S. R. Co.*, 120 N. C. 557, 27 S. E. 125.   The proximate cause of the accident was the wrongful intervention of a responsible human being, for whose act no liability attaches.   The blast was the proximate cause of the accident.   1 Shearman & Redfield, Negligence, § 38; Wharton, Negligence, § 134; *Stone v. Boston & A. R. Co.*, 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794; *Goodlander Mill Co. v. Standard Oil Co.*, 63 Fed. 400.   The inquiry is not whether the injury might have been avoided had the city known in advance that a blast was

to be fired which would produce certain conditions, but whether, taking conditions as they then existed, it was negligent in failing to anticipate the intervention of such extrinsic force and prevent the injurious result. For an accident such as this no liability can attach. Ray, Negligence of Imposed Duties, pages 133, 134; *American Brewing Ass'n v. Talbot*, 141 Mo. 674, 42 S. W. 682, 64 Am. St. 538; *Sofield v. Sommers*, Fed. Case No. 13,157; *Stone v. Boston & A. R. Co., supra; Sullivan v. Jefferson Avenue R. Co.*, 133 Mo. 1, 34 S. W. 566, 32 L. R. A. 167; *Fuchs v. St. Louis*, 167 Mo. 620, 67 S. W. 610, 57 L. R. A. 136; *Chandler v. Kansas City, Missouri Gas Co.*, 174 Mo. 321, 73 S. W. 502, 97 Am. St. 570, 62 L. R. A. 474.

*McClure & McClure, H. W. Hogue*, and *Howard Waterman*, for respondents, contended, *inter alia*, that the instruction casting the burden of proof upon the defendant to overcome the presumption was correct. *LaBee v. Sultan Logging Co.*, 51 Wash. 81, 97 Pac. 1104; *Pate v. Columbia & Puget Sound R. Co.*, 52 Wash. 166, 100 Pac. 324; *Jolliffe v. Northern Pac. R. Co.*, 52 Wash. 433, 100 Pac. 977; *Whitlach v. Fidelity & Casualty Co.*, 149 N. Y. 45, 43 N. E. 405; *Houston v. Brush*, 66 Vt. 331, 29 Atl. 380; *Heinemann v. Heard*, 62 N. Y. 448, 456; 2 Labatt, Master and Servant, § 834; 4 Wigmore, Evidence, § 2509; *Anderson v. McCarthy Dry Goods Co.*, 49 Wash. 398, 95 Pac. 325, 126 Am. St. 870, 16 L. R. A. (N. S.) 931; *Delahunt v. United Telephone & Telegraph Co.*, 215 Pa. 241, 64 Atl. 515, 114 Am. St. 958, 20 Am. Neg. Rep. 727; *Alexander v. Nanticoke Light Co.*, 209 Pa. 571, 58 Atl. 1068, 67 L. R. A. 475, 17 Am. Neg. Rep. 354; *Newark Elec. Light & Power Co. v. Ruddy*, 62 N. J. L. 505, 41 Atl. 712, 5 Am. Neg. Rep. 402. The instruction as to the city's duty in the use of electricity was proper. *Block v. Milwaukee St. R. Co.*, 89 Wis. 371, 61 N. W. 1101, 46 Am. St. 849, 27 L. R. A. 365; *Mason v. Richmond & D. R. Co.*, 111 N. C. 482, 16 S. E. 698, 32 Am. St.

814, 18 L. R. A. 845; *Deans v. Wilmington & W. R. Co.,*
107 N. C. 686, 12 S. E. 77, 22 Am. St. 902; *Clark v. Wilmington & W. R. Co.,* 109 N. C. 430, 14 S. E. 43, 14 L. R.
A. 749; *Witsell v. West Asheville & S. S. R. Co.,* 120 N. C.
557, 27 S. E. 125.   The city was not exercising governmental functions, and is charged with the liability attaching
to private persons.   *Eaton v. City of Weiser,* 12 Idaho 544,
86 Pac. 541, 118 Am. St. 225, 20 Am. Neg. Rep. 504;
*Davoust v. Alameda,* 149 Cal. 69, 84 Pac. 760, 5 L. R. A. (N.
S.) 536, 20 Am. Neg. Rep. 7; *Ohrstrom v. Tacoma,* 57 Wash.
121, 106 Pac. 629.   That the negligence of the city was not
the sole cause of the accident is no defense.   1 Thompson,
Negligence, § 75; Bishop, Non-Contract Law, §§ 39, 451;
*Harrison v. Kansas City Elec. Light Co.,* 195 Mo. 606, 93
S. W. 951, 7 L. R. A. (N. S.) 293; *Newcomb v. New York
Cent. & H. R. Co.,* 169 Mo. 409, 69 S. W. 348; *Bassett v.
St. Joseph,* 53 Mo. 290, 14 Am. Rep. 446; *Brennan v. St.
Louis,* 92 Mo. 482, 2 S. W. 481; *Vogelgesang v. St. Louis,*
139 Mo. 127, 40 S. W. 653; *Brash v. St. Louis,* 161 Mo. 433,
61 S. W. 808; *Smith v. Union Trunk Line,* 18 Wash. 351,
51 Pac. 400, 45 L. R. A. 169; *Franklin v. Engel,* 34 Wash.
480, 76 Pac. 84; *Woolf v. Washington R. & Nav. Co.,* 37
Wash. 491, 79 Pac. 997; *Gray v. Washington Water Power
Co.,* 27 Wash. 713, 68 Pac. 360.

CROW, J.—About ten o'clock p. m. on March 12, 1908,
W. L. Abrams, living in the city of Seattle, went into the
kitchen of his residence, attempted to turn on an electric light,
and received a shock which instantly killed him.   The city of
Seattle then owned and operated an electric power plant,
from which, under contract, it was furnishing current to
Abrams' house for illuminating purposes.   This action was
commenced against the city by Anna E. Abrams, and Eleta L.
Abrams by Anna E. Abrams, her guardian *ad litem,* widow
and daughter of W. L. Abrams, to recover damages resulting
from his death.   From a judgment in their favor, the defendant has appealed.

The electric current was transmitted from the original source of energy to a substation, from which it was further transmitted to various localities throughout the city over what were called primary wires, each carrying about 2,200 volts. By means of an instrument known as a transformer, the current from a primary wire was reduced to about 220 volts, and then transmitted over a secondary wire into residences for lighting purposes. The wire carrying 2,200 volts is called the "primary," and the wire which leaves the transformer and carries only 220 volts is called the "secondary." The former carried a current dangerous to human life, and the latter one that a man may receive into his body without injury. To prevent too heavy a current being carried into a residence, a properly constructed lighting system is provided with a ground, which is a device to divert any excessive current with which the secondary may become charged, and conduct it to the earth, whence it returns to the source of supply at the central station and registers upon a switch board panel. When a large amount of excess current is so conducted to the earth, the ground is a heavy one. When the amount is small, a light ground results. The ground device used by the city consisted of an iron rod about five feet and a half in length, driven full length into the earth. To this rod was securely riveted and soldered a number six copper wire which, running up one of the light poles, connected with the secondary wire. The various circuits extending from and returning to the station were numbered. The Abrams residence was on number two. When a ground occurred, it registered on the switch board panel at the station, by means of two lamps known as ground lamps, which ordinarily burn but dimly. When the ground registered, one of these lamps would go out, while the other would burn with great brilliancy. The city had a "two-phase" system, by which one set of ground lamps was used for two circuits. Circuit number two, conducting the current resulting in Mr. Abrams' death, was on the same phase with circuit number eight. If

one of these circuits registered a ground, the operator at the station would be unable to observe a subsequent ground coming over the other circuit on the same phase, until the first ground had been corrected. About ten o'clock on the evening of the accident, a ground was registered from circuit number eight and continued for several hours. The effect of this condition was that a subsequent ground on circuit number two would not register at the central station.

A short time before his death, Mr. Abrams, from his window, had noticed some electrical phenomena on the wires near his home, afterwards shown to have been caused by the "primary" crossing and coming in contact with the "secondary." This contact was not continuous but intermittent, a variable but heavy wind occasionally throwing the wires together. Evidence was introduced to show that the "secondary" wire and the insulator to which it was attached had become separated from the cross-arm of the light pole; that the secondary had fallen across the primary where insulation had become defective from rain and other causes; that the 2,200 voltage from the primary was thus transmitted to the secondary; that this excess voltage did not reach the earth because the ground device was out of repair; that this condition of the wires and ground might have been caused by the blasting of a large stump near by; that the ground did not carry the excess current from the secondary, and that it was therefore carried into the dwelling house where it electrocuted Mr. Abrams. The appellant contended that it had exercised due diligence in the inspection of its wires and other appliances; that it had used such modern and proper devices as were ordinarily used and required; that the defective condition of the wires and ground was caused without its participation, knowledge, or consent, by third parties, and that the death of Mr. Abrams resulted from an unavoidable accident, and not from its negligence.

Appellant first contends that the trial judge erred in giving the following instruction:

"I instruct you that if you find that the accident com-
plained of was one which, in the ordinary course of business,
would not have occurred except for failure or neglect on the
part of the defendant, its agents or employes, to use that
degree of care which the law requires and which I will here-
after explain to you, and you further find that the negligent
operation of the defendant's electrical apparatus is naturally
accompanied with danger, and that knowledge of its condi-
tion is practically limited to the defendant or its servants,
and evidence as to the same is unavailable except through it
or them, and that the deceased was under no obligation to
know, and did not know, or have reason or opportunity to
know of the danger that threatened him, then the mere hap-
pening of the accident under such circumstances creates the
presumption that the defendant was negligent, and in that
case the burden would be shifted to the defendant to show by
a fair preponderance of the testimony that it was not guilty
of such negligence."

In substance, appellant's contention is that the trial judge
erred in holding the burden of proof, which was shifted to it
to show that it was not negligent, should be sustained by it
by "a fair preponderance of the testimony." We think no
prejudicial error was committed in this regard. The doc-
trine of *res ipsa loquitur* should be applied to its fullest
extent in this case. The appellant, for its own profit, was
dealing in one of the most dangerous agencies known to
modern science. Electricity is a silent power which ordinarily
can be neither seen nor heard. Yet it can be so controlled,
by those upon whom the duty of its control is imposed, that
it may safely be conducted into a private residence, where it
becomes harmless and useful. The city had contracted to
furnish the Abrams house with light. It was under an im-
plied contract to do this in the safest manner possible. Its
duty was to protect Abrams and his family, by exercising the
highest degree of care, skill, and diligence in its selection,
construction, and maintenance of devices and appliances. Mr.
Abrams was entitled to assume, when attempting to utilize the
electric current in the customary manner, that he would
not be subjected to personal injury or sudden death. When

he did so attempt to use it and was electrocuted, a presumption of negligence on appellant's part immediately arose. The fact of his injury was itself sufficient to constitute a *prima facie* case of appellant's negligence. To say that his heirs or representatives cannot recover damages until they affirmatively prove some specific act of negligence by a fair preponderance of the evidence, might result in a denial of their right of recovery, no difference how negligent the appellant may have been. Twenty-two hundred volts of electric current could not have passed through the body of Abrams without some negligence, mismanagement, or mishap which, under ordinary circumstances, could only have been known to, or be explained by, the party in charge of the system. The accident being shown, the burden devolved upon the appellant either to disclose a cause for which it was not responsible, or otherwise show that it (the appellant) was guilty of no negligence. How could appellant do this? Manifestly by affirmatively showing the true cause of the accident, or that its system was in as perfect condition and repair as it could be kept by exercising the highest degree of diligence, and that Abrams' death was the result of some accident beyond appellant's control. This burden devolved upon appellant, and while it might perhaps have been better for the trial judge to have omitted from the instruction the words "by a fair preponderance of the testimony," we cannot say that their use, in the light of admitted conditions and of other instructions given, was prejudicial, or deprived appellant of any substantial right.

" 'While it is true, as a general proposition, that the burden of showing negligence on the part of the one occasioning an injury rests in the first instance upon the plaintiff, yet, . . . when he has shown a situation which could not have been produced except by the operation of abnormal causes, the onus rests upon the defendant to prove that the injury was caused without his fault.' When the physical facts surrounding an accident in themselves create a reasonable probability that the accident resulted from negligence, the physical facts themselves are evidential, and furnish what the law terms evidence

of negligence, in conformity with the maxim 'Res ipsa lo-
quitur.' It would seem more accurate to say, not that neg-
ligence is presumed from the mere fact of the injury or ac-
cident, but, rather, that it may be inferred from the facts
and circumstances disclosed, in the absence of evidence show-
ing that it occurred without negligence." Jaggard, Torts,
p. 938.

Practically speaking, it is immaterial whether to the duty
of explaining the cause of the accident which the law imposes
upon appellant, we apply the term "burden of proof" or the
term "preponderance of the evidence." As suggested by
counsel for respondents, there can be no magic in any par-
ticular form of words. To grant a new trial on the theory
that the instruction given was so erroneous as to be prejudi-
cial, would, we think, be a miscarriage of justice.

Appellant further contends that the trial court erred in
instructing the jury as follows:

"Every reasonable effort must be made to adopt and use all
proper means readily obtainable and known to science for the
prevention of accidents;"

and in refusing the following requested instruction:

"I charge you that the law does not require that the city
should install and adopt every new device and electrical ap-
pliance and safeguard that may be put upon the market for
sale; the city has done its whole duty in regard thereto when
it installs and uses all those appliances and devices and safe-
guards which are in common and general use and generally
approved by electrical experts and men who know about such
matters and when it has exercised that degree of care and
caution heretofore defined to you in these instructions in the
adoption and use of such appliances and devices."

The instruction to which the appellant excepts is an excerpt
from the following instruction given by the court, in which
we italicize the words to which appellant objects:

"The general charge of negligence or carelessness made by
the plaintiffs against the defendant includes negligence in the
appliances and devices adopted and installed as a part of
its system, and negligence in the maintenance and operation

of its system as installed. With reference to the city's duty in the matter of its appliances, devices, etc., the law requires that the city shall, in selecting and installing its appliances and devices, use that degree of care which reasonably prudent men engaged in the same line of business would use under similar circumstances, to have and to procure and install such as the experience of men so engaged has shown to be reasonably safe for the purposes for which they are used, in view of all the conditions and circumstances connected with the business and of the dangers to be reasonably apprehended. *Every reasonable effort must be made to adopt and use all proper means readily obtainable and known to science for the prevention of accidents.* In determining the question of the city's negligence in this respect it is proper for you to consider whether as to any particular appliance, device or manner of installment or arrangement, complained of in the evidence in this case, there exists a reasonable difference of opinion among electrical experts and men possessing knowledge, and qualified to speak thereon, concerning the efficiency of such appliances or system, and in the light of all these facts to determine whether the city is or is not properly chargeable with negligence in the adoption or arrangement of its devices or appliances."

It seems to us that this instruction is such a fair statement of the law as not to mislead the jury to appellant's disadvantage. It would be difficult to frame a more satisfactory or complete statement of appellant's duty in the matter of adopting modern and safe appliances. The rights of both parties were well guarded, and the question of fact whether appellant did discharge its duty was thereby properly submitted to the jury for determination.

Appellant vigorously insists that the trial court erred in denying its challenge to the sufficiency of the evidence, and its later motion for judgment notwithstanding the verdict. Its position seems to be that the sole and direct cause of the accident was the wrongful and illegal act of a third party in firing a blast, which caused the crossing of the wires and so disturbed the ground device as to impair its usefulness; that the blasting occurred in the morning about seven o'clock, on

the day of the accident; that the city had but recently inspected its wires, ground device, and other appliances; that it had no knowledge, until after the accident, of the disarrangement of its wires, caused by the blast; that it exercised the utmost diligence, and that the accident resulted from the wrongful and illegal act of a third party, for whom it is not responsible. This contention necessarily assumes that other acts of negligence, alleged by respondents, must be eliminated from the consideration of the jury.

The respondents contended, and offered evidence to show, that certain appliances used by appellant were not suitable or appropriate for the purposes they were intended to serve. But without regard to such contentions, we have concluded, from an examination of all the evidence, too voluminous to be here stated, that the questions whether the blast mentioned caused the accident, whether the city had timely notice of such blasting, whether it was diligent in inspecting and protecting its wires and equipment, and whether it used such modern appliances as were required by that high degree of care imposed upon it, were all for the jury, and the evidence on these issues was clearly sufficient to support the verdict. Mr. Abrams was killed in his own residence, without warning, without his fault, by an excessive current of electricity, transmitted over appellant's wires. Appellant's wires were crossed. There was evidence that its ground device did not properly perform its functions, and that its servants in charge of the central station were not informed of the condition of its wires for several hours after Mr. Abram's death. It was its duty to have and keep all of its appliances in safe condition and proper repair. It did not do so, and it was certainly a question for the jury to determine whether it was negligent or whether it had exercised that high degree of care and diligence which the law requires from a person dealing with such a deadly agency.

In *Royal Elec. Co. v. Heve*, 11 Quebec L. R. (K. B. 1902) page 436, plaintiffs recovered damages for the death of a

husband and father who had been electrocuted by coming in contact with an electric light bulb, and the defendant appealed. It contended, and had introduced evidence to show, that the current came through the guy wire of another electric company which had crossed its secondary. Hall, J., speaking for the court, at page 452, said:

"But in my opinion, it is a matter of indifference, legally speaking, where this current originated. The appellants should be held responsible for it under any circumstances. They deal in a commodity of a recognized dangerous character, the control of which is a matter of technical knowledge and experience, and entirely uncomprehended by the general public. When a company like the appellants, organized under the name of an electric company, hold themselves out to the public as dealers in and suppliers of that commodity for gain, and make contracts with private individuals for furnishing light or power over a system constructed and controlled by themselves, they are bound to deliver it in a form and under conditions of safety for the person and property for whose use the company charge and receive compensation, and they are also bound, in the discharge of their part of the contract, to a supervision and diligence proportionate to the peculiar character and danger of the commodity in which they deal. . . The implied contract between the appellants and deceased was that they should supply his premises with a safe electrical current for lighting purposes by the lamps which they furnished. They failed in this respect, and in the use of their lamps he received a current of electricity by which he was instantaneously killed. The presumption is that it came over the same system and from the same source as that by which his ordinary supply was delivered to him by appellants. The burden of proof is upon them to show the contrary. This they have failed to do, and the judgment holding them responsible for the accident should be confirmed."

It is evident from the verdict in this case that the jury concluded the appellant had not sustained the burden of proof resting upon it to show that the accident was not caused by its negligence. In *Chaperon v. Portland Elec. Co.*, 41 Ore. 39, 67 Pac. 928, plaintiff's horse was killed during the night season at about three o'clock a. m., by coming in contact with

a broken wire heavily charged with electricity. The defendant introduced evidence tending to show careful and frequent inspection on its part, and that the break was caused without its knowledge by a violent storm which occurred at an earlier hour of the same night. Relying on this evidence, it moved for a directed verdict. Its motion was denied. The appellate court, at page 47, said:

"When plaintiff made a *prima facie* case, this imposed upon the defendant the burden of showing, as we have seen, that the fracture of the wire was a condition not due to its fault, or that it used due care in the construction and maintenance of its system, and that the accident was one that could not have been provided against by reasonable foresight and precaution. This burden should not be confused with the burden of making the better case as between the plaintiff and defendant. The plaintiff must have made the better case in the end by the preponderance of evidence. When the defendant produced its evidence, the case rested; and it became a matter for the jury to determine whether it had succeeded, or whether, notwithstanding its attempt at exoneration, plaintiff's *prima facie* case was even yet the stronger and more satisfactory. The questions to be passed upon were of fact, and it was not within the province of the court, under the evidence adduced, to say to the jury, by directing a verdict, that its exoneration has been substantiated, and therefore that plaintiff's *prima facie* case had been overcome. So there was no error in finally submitting the case to the jury."

Other assignments of error, based upon instructions given and refused, and upon the admission of evidence relative to previous blasting near the wires, we find to be without merit.

The appellant has been awarded a fair trial. The jury found against it, and their verdict must stand. The judgment is affirmed.

DUNBAR, MOUNT, and PARKER, JJ., concur.

RUDKIN, C. J. (dissenting)—I concur in the foregoing opinion, in the main, but cannot approve of an instruction that the burden of proof is on the defendant to show a want of negligence, by a fair preponderance of the testimony, in cases

where the doctrine of *res ipsa loquitur* applies. Such an instruction is inherently and fundamentally wrong. The presumption of negligence which arises from the mere happening of an accident in this class of cases is a mere presumption of fact. Its weight will vary according to the circumstances of each individual case and is wholly for the jury. The distinction between the burden cast upon the defendant to explain the cause of an accident, or exculpate himself from the charge of negligence, and the burden of proof on the main issue in the case, is clearly pointed out in *Chaperon v. Portland Elec. Co.*, 41 Ore. 39, 67 Pac. 928, cited in the majority opinion, where the court said: "This burden should not be confused with the burden of making the better case as between the plaintiff and defendant. The plaintiff must have made the better case in the end by the preponderance of evidence. When the defendant produced its evidence, the case rested; and it became a matter for the jury to determine whether it had succeeded, or whether, notwithstanding its attempt at exoneration, plaintiff's *prima facie* case was even yet stronger and more satisfactory." In other words, when the proof is all in, the jury must be satisfied from the entire testimony that the charge of negligence is established by a preponderance of the evidence, for, if not, the plaintiff fails in his action. This rule is so elementary that I deem further discussion unnecessary. Nor can it be said, as a matter of law, that an instruction which imposes the burden of establishing a cause of action or defense, by a preponderance of the testimony, on the wrong party, is not prejudicial.