[No. 14271. Department Two. January 17, 1918.]

THE CITY OF SEATTLE, *Appellant*, v. PETERSON & COMPANY *et al., Respondents.*[1]

APPEAL—DECISION—LAW OF CASE. In an action against a city and a contractor for personal injuries due to the neglect of the city in failing to maintain proper equipment in its power station, and of the contractor in blowing out a stump affecting electric wires and ground devices, the instructions as to the duty of the city become the law of the case, in the city's subsequent action to recover over from the contractor for the contractor's negligence.

JUDGMENT—RES JUDICATA—PARTIES CONCLUDED — CONTRIBUTION — JOINT TORT FEASORS. In an action against a city and a contractor for personal injuries due to the neglect of the city in failing to maintain proper equipment in its power station, and of the contractor in blowing out a stump affecting electric wires and ground devices, a verdict and judgment against the city establishes its independent act of negligence, and is *res judicata* and bars an action by the city to recover over from the contractor for its concurrent negligence; since there is no contribution between joint tort feasors.

Appeal from a judgment of the superior court for King county, Frater, J., entered April 7, 1917, upon granting a nonsuit, dismissing an action to recover over from a contractor the amount paid in satisfaction of a judgment for wrongful death, tried to the court and a jury. Affirmed.

[1]Reported in 170 Pac. 140.

*Hugh M. Caldwell* and *Frank S. Griffith*, for appellant.

*Roberts, Wilson & Skeel* and *Lee. Johnston*, for respondents.

Morris, J.—In this case the city of Seattle seeks to recover over against respondent Andrew Peterson & Company, grading contractors, for damages which the city was compelled to pay by reason of the judgment against it in the case of *Abrams v. Seattle*, 60 Wash. 356, 111 Pac. 168, 140 Am. St. 916, to which case reference is made for a fuller statement of the facts.

The liability of the respondent is predicated upon a bond given to the city before entering upon the performance of the grading contract, to the effect that the contractor would indemnify the city:                                      .

"The contractor will be required . . . generally to obey all laws and ordinances controlling or limiting those engaged on the works, and the said contractor expressly stipulates and agrees . . . to indemnify and save harmless the city of Seattle from all suits and actions, of every name and description, brought against the said city for or on account of any injuries or damages received or sustained by any party or parties . . . in consequence of any negligence of said contractor or his or their agents or employees, in carrying on said work, or by or on account of any act or omission of said contractor in the performance of said work."

It thus becomes necessary to examine the *Abrams* case to ascertain the issue there submitted to the jury and determine the negligence upon which the judgment against the city was based. It was contended by the plaintiffs in the *Abrams* case that the cause of Abrams' death was shock received while attempting to turn on an electric light in his residence; that the city owned and operated the plant furnishing the power used in the house for lighting purposes, and that a secondary wire carrying 220 volts had become detached from its fastening because of insecure tying and had fallen across a primary wire carrying 2,200 volts; that this contact caused a large

voltage to pass into the Abrams' house and charged the fix-
ture Abrams was operating, with the result that the danger-
ous voltage passed into his body, causing death. It was fur-
ther contended that, in order to prevent accidents of this
character, a properly constructed lighting system is pro-
vided with a ground which diverts the excessive current and
conducts it to the earth, whence it returns to the central sta-
tion and registers upon a switch; that the devices and appli-
ances used by the city for this purpose were insufficient and,
because of such insufficiency and the lack of proper equip-
ment, a ground did not register and the employees of the
city at the central station were not informed of the dangerous
situation until several hours after the death of Abrams. On
its part, the city maintained that it was not negligent in any
of these respects, and that the proximate cause of the in-
jury was the act of the contractor in blowing out a stump at
the foot of the pole which carried the electric power to the
Abrams' residence; that, in setting off the blast, the stump
was violently torn from the earth, loosening an iron rod to
which the ground wire was attached and destroying its use
as a ground, and the stump thrown against the wires, tear-
ing them loose from their fastening.

It will thus be seen that there were two theories of the
cause of the accident submitted to the jury, (1) the neglect
of the city in failing to maintain proper equipment at its
central station, and (2) the negligence of the contractor in
blowing out the stump, with its consequent effect upon the
wires and ground devices. In submitting these issues to the
jury, the trial court charged that, if it was found that the
contact of the primary and secondary wires and consequent
injury to Abrams "was not the effect or result of neglect or
failure of duty on the part of the city," either in the adop-
tion or arrangement of its appliances or in its subsequent
operation, but:

"was brought about or caused by the interference or in-
tervention of some agency or source wholly disconnected with

defendant's operation of its system, then you cannot hold the city liable unless its officers or agents had notice of the existence of such dangerous condition in time to enable them by the required degree of diligence and care to prevent the injury . . .

"If the city has met the requirements of the law in the care exercised in the selection and adoption of the appliances and devices, and in the maintenance and operation of the plant, and if this accident was not the result of negligence on its part in these respects, but was due to some unavoidable accident which could not have been foreseen and avoided by the observance of the required degree of care on its part, then you must find in its favor."

Whether these instructions were right or wrong need not now be inquired into. They became the law of the case and the parties are bound by them. Under these instructions a verdict was rendered against the city which established its liability under the independent act of negligence alleged against it. The judgment entered upon that verdict is conclusive upon that point and is now *res adjudicata*. The case in this regard is controlled by *Puyallup v. Vergowe*, 95 Wash. 320, 163 Pac. 779. If the verdict in the *Abrams* case could be construed as a finding that both the city and the contractor were negligent, the result would be the same. The concurring negligence of the contractor would be immaterial and would not absolve the city from its liability nor permit it to fasten the burden of the verdict upon the contractor, there being no contribution between joint tortfeasors. *Tacoma v. Bonnell*, 65 Wash. 505, 118 Pac. 642, Ann. Cas. 1913B 934, 36 L. R. A. (N. S.) 582.

Ellis, C. J., Mount, Chadwick, and Holcomb, JJ., concur.