## Owensboro City Railroad Company v. Louisville, Henderson & St. Louis Railway Company.

(Decided September 23, 1915.)

### Appeal from Daviess Circuit Court.

1. Railroads—Crossing Track by Electric Road—Constitutional Law. —Section 216 Constitution requiring railway company to allow its track to be crossed by track of another company applies to electric as well as steam railways.

2. Railroads—Crossing Track by Another Road—Contract to Cross Track.—Where the railways enter into a contract relative to such crossing, the reciprocal duties and obligations therein prescribed amount to consideration sufficient to support the contract, although a grant to cross was required by law.

3. Railroads—Contract by Electric Road to Cross Track—Regulation.—By the contract the electric street car company was to string and maintain the trolley wire, but the railroad reserved the right to remove it if the electric company failed to properly maintain the wire. To remove the wire in such case the railroad should exercise care and prudence to prevent injury to the public and minimize the damage to the electric company.

4. Railroads—Injury from Sagging Trolley Wire Over Track—Contribution.—Where the electric company negligently permitted the trolley wire to sag low over the track, and the servants of the railroad broke the wire by running a train into it and injured one Haden, when the railroad's servants knew, or in the exercise of ordinary care could have known, that the wire was sagged low and that the train could not pass under, and where both companies were sued jointly by Haden and held liable in separate sums on account of their joint and concurring negligence, they are joint tort feasors, and neither is entitled to contribution from the other.

5. Railroads—Street Railroads—Concurring Negligence.—In the Haden case the instructions required the jury to believe the electric company negligently suffered the wire to sag low in order to find against that company, and in order to find against the steam road they were required to believe its servants knew, or by the exercise of ordinary care could have known, that it was sagged low. Where, under such instructions, the jury found against each company, their finding is conclusive between them in a suit by one against the other for contribution. Such finding establishes their joint and concurring negligence as the proximate cause of the accident.

6. Railroads—Joint Tort Feasors.—Contribution.—The fact that under the contract it was the duty of the electric company to maintain the wire, and that the railroad, therefore, had a right to rely upon the electric company performing its contract, does not take the case out of the rule of non-contribution between joint tort feasors,

where it has been established. and adjudged that the railroad knew or ought to have known the wire was sagged low.

E. B. ANDERSON for appellant.

W. P. SANDIDGE and J. R. SKILLMAN for appellee.

OPINION OF THE COURT BY JUDGE NUNN.—Reversing.

The appellant will be referred to as the street car company, and the appellee as the railroad.

One Haden was severely injured through the joint and concurring negligence of the street car company and the railroad. He sued them jointly and recovered against each.

The jury awarded $500 against the street car company and $1,500 against the railroad.

On appeal to this court the judgment as to each was affirmed and the instructions approved. Owensboro Street Railway Co. v. Haden, 155 Ky., 283; 159 S. W., 792.

Including penalty, interest, and cost, the railroad was compelled to pay $1,877.58 on account of this accident. The railroad then brought suit against the street car company to recover that sum as damages for alleged breach of contract. The street car company answered in several paragraphs, and also set up a counter-claim in damages for the expense it had been put to by reason of the accident. The circuit court sustained demurrer to the answer and counter-claim. The street car company declined to plead further and the circuit court rendered judgment against it for $1,877.58, the amount paid out by the railroad, conceiving that to be the measure of damages. From this judgment the street car company appeals and contends that, (1) The contract was without consideration. (2) There can be no contribution between joint tort feasors.

For a better understanding of the questions it will be necessary to relate more details of the accident and the other trial.

The appellant, street car company, owns and operates a street railway in the city of Owensboro. The appellee owns and operates a line of railroad which runs from Evansville, through Owensboro, to Louisville. In 1910, the street car company decided to extend one of its lines in Owensboro out West 9th Street, crossing the railroad track near the western limit of the city. The Constitution of Kentucky, Section 216, required the railroad to

allow such crossing at a reasonable or feasible point. Since both companies operated cars and trains as common carriers it was evident, of course, that the crossing would devolve many new duties and responsibilities upon each. Instead, however, of litigating to determine their relative duties they agreed upon them, and entered into a written contract. This contract, among other things, provided that a crossing be constructed at the place designated, and that it be kept in repair by the railroad, but wholly at the expense of the street car company.

It was further stipulated that the railroad "shall at all times be the sole judge of the condition of said crossing and shall determine when or whether or not it is to be renewed or repaired."

The clause with reference to the trolley wire is more material to the issue, and is as follows:

"The trolley wire or wires of the said street car company over the track of said railroad company at said crossing shall be at all times not less than twenty-two (22) feet above the top of the rails of said railroad company, and such wires, and all poles, arms, supporting wires, wire connections, etc., used at or near such crossing shall be so constructed and maintained by the said street car company, its successors and assigns, as that they shall in no manner interfere with the movement of any locomotive, engine, train, or car of any kind, or endanger the life or safety of any person on such locomotive, train or cars, whether in the employ of said railroad company or not, and no such pole, poles, brace, braces, guy wire or other wire, or any other portion of the over-head construction of said street car company shall be constructed or maintained nearer than fifteen (15) feet to the center line of said railroad company's track at said crossing, and if the said street car company shall fail or refuse when called upon by said railroad company, or by any one authorized to call upon it, to properly maintain or place any such wires, poles, braces, or other things in the manner above set out, and in such way as said railroad company may from time to time deem necessary and proper to guard said crossing and the safety and lives of its employes and others, then and in such event *the said railroad company may proceed to remove such poles, wires, and appliances* and the materials therein, or said railroad company, or its successors and assigns, may at its option make such repairs or changes in or repairs on such wires, poles, or appliances

as it considers necessary and proper, charging the cost thereof to said street car company, which shall pay for same on demand.''

At noon on the 27th of June, 1912, a railroad work train passed the crossing and a derrick on one of the cars came in contact with the overhead trolley wire and broke it. One end of the live wire fell on Haden, who was standing in the street near the crossing. Haden sued and recovered for the injury thus inflicted. Each party to this action, whose joint and concurrent negligence the jury believed caused the injury, is now seeking to have the court charge the whole expense to the other, notwithstanding the apportionment made by the jury.

About nine hours previous to the accident, that is about 3 o'clock in the morning, another railroad work train passed the crossing. In this train there was a derrick car also. The derrick consisted of a perpendicular mast standing 18 feet above the track, and braced by a boom fastened to the mast at the top, and slanting about 45 degrees to a fastening on the floor at the other end of the car. This 18-foot mast interfered with the trolley wire, but did not break it. Considerable damage was done, however, to the trolley poles and guy wire. At 7 o'clock that morning the work train, which later caused the accident, passed the crossing while going out of the city. This train had a derrick car with a mast 19½ feet above the track, and a boom pole, 28 feet long, anchored to the top of the mast and to the floor at the opposite end of the car. This boom sloped at a 45-degree angle. In going out of the city that morning the sloping boom lifted the wire over the mast without breaking it. When the train returned at noon the wire, which was still swinging low, came first in contact with the perpendicular mast and was broken, injuring Haden, as above stated.

As to the street car company, Haden alleged that it negligently allowed this trolley wire to swing so near the tracks as to render it unsafe and dangerous; as to the railroad, he alleged that it negligently ran its train against the live trolley wire and broke it, when its servants knew that it was sagged low and in a dangerous position, or when they could have known it by the exercise of ordinary care.

The instructions directed the jury to find against the street car company if they believed it negligently suffered the trolley wire to sag down and come closer to the track than 22 feet, or find against the railroad if they believed

it so negligently operated its trains as to strike and break the trolley wire when the wire was 22 feet or more above the track.   Or if they believed the  wire  was  hanging closer to the track than 22 feet, and low enough to come in contact with the derrick, and the servants of the railroad knew this fact, or in the exercise of ordinary care could have known it in time to stop the train and avoid breaking the wire, then they should find against the railroad alone.   If the jury believed the injury was the result of the joint and concurrent negligence of the two defendants they were instructed to find against both of them.

"The verdict of the jury (quoting from the former opinion) shows that they in effect found that the wire was sagged; that the street car company had notice of its condition or should have discovered it; and that the railroad company also had notice of it."

In discussing the case the parties do not resist the proposition that they are concluded by the former judgment, and that, therefore, each was guilty of negligence which, concurring, caused Haden's injury.   But the railroad contends that the judgment merely established the fact that it was negligent as to Haden—not as to the street car company.   Neither is there any issue between the parties on the proposition that, subject to certain exceptions which will be referred to later, a joint tortfeasor is not entitled to indemnity or contribution from the other.   But the railroad contends that the contract referred to takes this case out of the rule altogether.

As to the proposition that the finding of the jury established negligence on the part of the railroad as to Haden only, the railroad argues that there was no evidence to show that it was guilty of negligence as to the street car company; that to justify such a conclusion it must have appeared that its servants had actual knowledge of the sagged wire before they broke it.   There being no evidence, as the railroad contends, to show actual knowledge by its servants of this danger it insists upon the conclusion that the jury believed only that the engineer negligently failed to observe the sagged wire, or, observing it, carelessly concluded that the train could safely pass under it, or else they believed the railroad watchman at the crossing was either negligent in failing to observe the sagged wire or negligently failed to warn the trainmen.   One of these propositions would not preclude the idea that the servants of the railroad had actual

notice of the sagged wire. Anyhow, whether there was evidence to support the verdict, or upon what theory the jury returned the verdict, these questions are not now open for consideration, for the judgment in the Haden case established the fact that the wire was sagged to the point of danger and both parties had notice of it, and therefore both were negligent. Since both parties are concluded by this judgment there is no room here for questions about the sufficiency of the evidence, or the accuracy of the conclusions drawn therefrom by the jury. Neither are we able to make the distinction insisted upon by the railroad that the finding established negligence on its part only as to Haden, and that the judgment is conclusive to that extent only. It is true that the railroad reserved the right to either repair or remove the wire if the street car company failed to keep the wire at the height specified. But this did not give the railroad the right to remove it in the way it did when Haden was injured. If it found necessity for removing the wire then it should have done it in a prudent and careful manner, so as not to cause injury to the public, and minimize at the same time the damage to the street car company. There is nothing in the contract to indicate that the parties contemplated that the wire was ever to be removed by running a railroad train into it. If the servants of the railroad knew of its dangerous position—many of the circumstances point to that fact—then the railroad was guilty of negligence as to the street car company if it deliberately broke it down with a moving train, for in that way its negligence concurred with that of the street car company, and but for which concurring negligence Haden would not have been injured, and the street car company would not have been mulcted in damages.

We may state here our opinion that the contract is supported by a sufficient consideration, although, in our view, that is not the controlling question. The crossing clearly comes within the provisions of Section 216 of the Constitution, which requires:

"All railway, transfer, belt lines, and railway bridge companies shall allow the tracks of each other to unite, intersect and cross at any point where such union, intersection and crossing is reasonable or feasible."

This section applies to electric railways as well as to steam railroads. L. & N. v. B. G. Ry. Co., 110 Ky., 788.

But it does not follow that the contract was without consideration merely because the law required the railroad company to allow the crossing. As already noted, the crossing devolved upon the railroads many relative duties and it was eminently proper for them to agree in advance in that regard. Furthermore, in the absence of any agreement, it was a debatable question whether a crossing at the point named was reasonable or feasible. The contract waived this question and settled the others. These mutual obligations, thus assumed, amount to a consideration sufficient to support the contract. Evansville & S. I. Traction Co. v. Evansville Belt R. Co., 87 N. W., 21. Therefore, treating the contract as binding, the question still remains whether the railroad has a cause of action against the street car company.

There are certain broad and generally recognized principles of law relative to contribution, exoneration, and indemnity, as affected by contracts. These principles are so familiar that it will be sufficient merely to mention some of them. There is the doctrine of contribution between co-sureties, and the doctrine of exoneration or indemnity of a surety by his principal. But as between joint tort feasors these principles do not apply, for the rule is that there can be no contribution or indemnity between them. The law will not imply a contract to reimburse or indemnify in such case. This rule arises from the maxim that the law will not relieve a party from the consequence of his own wrong doing. It is true that the effect of the rule is to permit the injured party to single out one wrong doer for punishment and entirely relieve the other. For that reason it may seem severe and does often work injustice—between the wrong doers—but principles of public policy intervene at this point, and in a conflict between the interests of society and wrong doers the law protects society.

As stated by Mr. Cooley in his work on Torts, Vol. 1-259, 3rd. Ed.:

"If he knew the act was illegal, or if the circumstances were such as to render ignorance of the illegality inexcusable, then he will be left by the law where his wrongful action has placed him."

In order to discourage illegal or wrongful conduct the state refuses a remedy, and thereby saves the time and expense of its courts from questionable efforts to adjust equities between wrong doers. Denial of redress, however, is strictly confined to that class of cases where

the person asking it knew, or in law is presumed to have known, that he was doing a wrongful act.

But if the tortious act with which one is charged was committed without his guilty intent or knowledge, then he may recover from the one upon whom rests the actual guilt or primary responsibility. For instance, in the case of a municipality held in damages for an obstruction in its streets, it may have redress against the party whose active and original wrong caused the obstruction. So, where an employer has been subjected to liability by the wrongful act of an employe, he may recover indemnity from the guilty servant. These examples illustrate also that class of cases where indemnity is allowed to one who was not an actual participant in the wrong, but was made liable by reason of the negligent act of some one acting under his authority. Cooley on Torts, Vol. 1, 3rd Ed., P. 260; City of Louisville v. Louisville R. Co., 156 Ky., 143; C., N. O. & T. P. R. Co. v. L. & N. R. R. Co., 97 Ky., 128; 30 S. W., 408; Pullman Co. v. C., N. O. & T. P. R. Co., 147 Ky., 498; 144 S. W., 385; Union Stock Yards Co. v. C. B. & T. R. Co., 196 U. S., 217; 25 Sup. Ct., 226; 49 L. Ed., 453.

In all cases, however, where redress is allowed, it must appear that the party seeking it was not the primary cause, and did not actively participate in nor authorize the wrongful act, and, therefore, as between the parties, was not a wrong doer. There is no dispute in this case about these propositions. They are briefly reviewed in order to reach the real issue, and that is whether the facts, with the contract, make this case an exception to the general rule of non-contribution between joint tort feasors—whether, as between the railroad and the street car company, the railroad was a wrong doer.

In the case at bar, as we have already noticed, the lower court permitted the railroad to recover on the idea that it was not a wrong doer as between it and the street car company, and on this appeal counsel for the railroad still so contends, and to support the judgment the contract is pointed to and the argument is made that as between the two companies the railroad had the right to rely upon the street car company keeping the wire in proper place because it had contracted so to do.

"The primary duty," as it argues, "under the contract was on the street car company. The case stands just as if the railroad company had hired the street car company, as an employe, to maintain the wire, at all

times, 22 feet above the rail." In other words, the railroad contends that the rule of indemnity between master and servant, or else the rule of contribution that prevails between joint contractors, rather than that between joint tort feasors, ought to apply. Unless the contract brings the case within one of these principles the judgment is erroneous and must be reversed.

As we view the case, there are several insurmountable facts in the way of the proposition contended for by the railroad; among them is the fact that the railroad company by the contract agreed to supervise and maintain this crossing, and reserved the right not only to repair but to remove the wire whenever proper or necessary. More than this, the parties are committed to the following state of facts which are conclusively established by the former judgment, viz: The street car company negligently permitted its trolley wire to sag down and come closer to the track than 22 feet, and those in charge of the work train knew, or by the exercise of ordinary care could have known, that the wire was closer to the track than 22 feet, and that the mastpole would strike the wire when the train passed the crossing. They knew these facts, or could have known them by the exercise of ordinary care, in time to have stopped the train and avoided the contact. By the former judgment, therefore, both parties—their wrong concurring to cause the injury—stand as active wrong doers. Are we to adjust the equities between them as measured by their wrong, or shall we leave them as the jury left them in the former proceeding?

The case of Central of Georgia Ry. Co. v. Macon Ry. & Light Co., 9th Ga. App., 628; 71 S. E., 1076, is very similar to the one in hand. An employe of the railway company was killed by taking hold of a steel cable used by the railway company in connection with its coal chute. This cable became crossed with a poorly insulated live electric wire belonging to the light company. His widow recovered against the railway company, and that company sought indemnity from the light company. The court, in denying the right of the railway company to indemnity, said:

"The judgment in the former case was as against the plaintiff in the present case, a conclusive finding of one or more of the following facts: That it allowed the wires to be installed in a negligent manner in the first instance; that it was neglectful in allowing them to remain where

they were, after the insulation had worn away; that it was neglectful as to inspection; and that one or more of these things was the approximate cause of the homicide. The railway company does not sue the light company in the present case for the breach of any contract on its part to install the wires in a proper manner, or to maintain them or to inspect them, but sues because that company was guilty of substantially the same tortious delinquency as it itself had committed.''

Counsel for the railway maintains that the absence of a contract for installation and maintenance of the wire in the Georgia case distinguishes it from the case at bar. From the wording of the opinion in the Georgia case, we infer that the result would have been different if the suit had been on a contract whereby it was the paramount duty of the light company to properly install and maintain the wire, and if it had further appeared that the railroad company had been guilty of no positive or active negligence but merely a negative kind, that is, a failure to inspect, and had been made liable in damages to its servant solely because the law imposes a duty of inspection as between the railway and its servant. But here it has been determined that the railroad was guilty of a positive act of negligence, and that act was the proximate cause of the injury, viz., running into the sagged wire with a railroad train when it knew or should have known that the wire was sagged to a point of danger.

Both parties cite the case of Brooklyn v. Brooklyn Street Railroad Company, 45 N. Y., 475; 7th Am. Rep., 469. The railroad company made a contract with the city for the use of a certain street, and agreed to keep in good repair that part of the street between the rails and three feet on each side. One Meier was injured in consequence of a hole in that part of the street which the railroad had agreed to keep in repair. The evidence did not show that the railroad made the hole, or, in fact, just what caused it. The city was held liable to the person injured because it was primarily responsible for the condition of the street, and could not relieve itself of that responsibility by delegating the duty. The city then sued, and was allowed to recover the damages over against the railroad for its failure to properly perform its contract. Had it been established that the hole in the street was made or caused by the railroad company the case

would clearly come as an exception to the rule of non-liability among joint tort feasors. But in the absence of such proof, the city relied upon the contract which gave the railroad permission to use the street, and, as part consideration therefor, the railroad agreed to assume responsibility for the upkeep of that part of it. The court, in holding the railroad liable to the city for breach of the contract, said:

"In the case before us, the proof does not show how the hole in the street was caused from which came the injury for which the plaintiff (the city) was held liable. The plaintiff was liable to the injured person by reason of its neglect of the duty incumbent upon it to keep the street in repair. This duty arose from the powers it had by its charter to control and repair the streets within its bounds. But in the absence of proof that the defendant, by its acts or negligence, caused the hole in the pavement, it can not be held liable otherwise than by the force of its contract with the plaintiff. The action, indeed, is upon the contract solely. The complainant particularly claims the damages which the plaintiff was obliged to pay the injured person, and states them as resulting from the failure of the defendant to perform its obligation. While it thus presents the question free from any consideration of the state of the pleadings, Armstrong v. Percy, 5 Wend. 535-8-9, it confines us to the contract and the rights and relations of the parties growing out of that."

Continuing the court says:

"Nor is the plaintiff, the city, liable to the objection that, being one of two wrong doers, it cannot have indemnity or contribution from the other, although compelled to pay the whole amount of the damage caused by the joint wrong. City of Boston v. Worthington, 10 Gray, 496. As between these parties, the plaintiff having taken from the defendant a covenant to do that which, if it had been done as agreed no harm would have befallen, had a right to rely thereon; and, though liable to third persons, is not so in *pari delicto* with the defendant as to be unable to sue and recover over."

It thus appears that the city was allowed to recover on the contract notwithstanding its negligence to the public in failing to keep the street in repair. But its negligence was not the active or primary cause of Meier's

injury; in other words, its negligence was only of a passive or negative kind. While the character of its negligence rendered it liable to the public, yet, under the exception to the rule, and independent of any contract, it could have recovered against the one whose negligence actually caused the defect, had that cause been known. But under the contract it could recover against the railroad anyhow, because the railroad had failed to do that which it had agreed for a valuable consideration to do— keep the street in repair. Had there been negligence of the city, active and concurring with that of the railroad, and contributing to the injury inflicted, it would then be regarded as a joint tort feasor and no recovery allowed. But where, as between them, the city was guilty of no negligence no satisfactory reason can be urged against a recovery by the city on a contract which obligated the railroad to do the very thing which it failed to do. In the case at bar there is this distinction, as determined by the former judgment; the railroad owed a duty not only to Haden and to the public generally, but to the street car company, as we think, to exercise ordinary care not to run into the wire. In view of the judgment and opinion in the Haden case, as we have already observed, the existence of that duty and the degree of care required are not now open to question.

Appellee railroad relies upon the case of Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass., 232; 86 Am. St. Rep., 478; 51 L. R. A., 781; 59 N. E., 657.

Kendall, a manufacturer, undertook to construct for the Boston Hose Company a boiler which would stand a working pressure of 100 pounds, with the understanding that it should be used in connection with naphtha vapor for experiments in vulcanizing india rubber. After the boiler was installed and the experiment tried, on a pressure of less than 100 pounds, the naphtha vapor blew out the packing (escaping between the door and the end of the boiler by the side of the hinge) and ignited, injuring one of the hose company's employes. The hose company sued Kendall to recover the damages which it had been compelled to pay to the injured employe. Chief Justice Holmes, delivering the opinion for the court, said:

"The very purpose of the warranty was that the boiler should be used in the plaintiff's works with reliance upon the defendant's judgment in a matter as to

which the defendants were experts and the plaintiff presumably was not. Whether the false warranty be called a tort or a breach of contract, the consequences which ensued must be taken to have been contemplated and were not too remote. The fact that the reliance was not justified as toward the men does not do away with the fact that the defendants invited it, with notice of what might be the consequences if it should be misplaced, and there is no policy of the law opposed to their being held to make their representations good.''

The hose company relied on the warranty and upon the expert judgment of the manufacturer as well, but a novice knows that a moving train will break a live wire if hanging in its way. The hose company by the warranty was convinced of security concerning an article about which it did not have expert knowledge. Here the railroad knew there was danger if the live wire should come below 22 feet, and because of the danger it stipulated for the right to supervise, even to remove it if sagged down to the danger point.

The case of Pullman Company v. C., N. O. & T. P. R. Co., 147 Ky., 498; 144 S. W., 385, is also relied upon by the railroad. The Pullman Company constructed a number of gondola cars for the railroad. The car in question was received and inspected by the railroad, but paint concealed a defective weld in the brake-staff. After being loaded with brick another inspection was made but without discovering the defect. While being shifted in the yard to make up a train for its first trip, the brakeman, Ward, in turning the brake wheel broke the staff. He was thrown off the car and seriously injured. The court points out the fact that the blacksmith in the Pullman factory knew, or could easily see, that the weld was imperfect. Although paint effectively hid the defect, the slightest wrench tore the two pieces apart. The brakeman sued the Pullamn Company and the railroad company jointly. The case was removed to the United States court and there tried. That court instructed the jury peremptorily to find for the Pullman Company, but as to the railroad, Ward was permitted to and did recover a judgment for $13,000. The Pullman case, *supra,* was an action by the railroad company in the state court to recover of the Pullman Company the damages it had thus been compelled to pay Ward. The Pullman Company

resisted on the plea that the judgment in its favor in the United States Court was a bar. The state court held that inasmuch as the Pullman Company and the railroad were not adversaries in that case, and as Ward con-- trolled and directed the character of evidence that was introduced, and which led to a peremptory instruction, the judgment could not be considered a bar. The Pull- man Company also resisted on the plea that it was a case of joint tort feasors, and that there could be no con- tribution between them. The evidence on the trial be- tween the two companies established the negligence of each, but as against the railroad its negligence was sec- ondary, and of a negative kind, while that of the Pullman Company was positive, a defective weld, and the primary cause of the injury. Recovery was allowed because, as the court stated, the negligence of the railroad consisted only in failing to discover the defect, and it, therefore, "was not a case of concurrent negligence between the two wrong doers. The railroad company did not create the danger, it simply used the car for the purpose for which it was intended."

In the case at bar, if the wire while sagged had been innocently broken by a railroad servant or a stranger, to the injury of himself or others, and recovery had against the railroad, although its negligence consisted in mere inattention, then there would be reason in its claim for indemnity, and closer analogy to the Pullman case, be- cause the railroad and its servants would then be guilty of no conscious or active wrong doing, and the primary duty to maintain the wire was on the street car com- pany. But here it is made to appear that the railroad, through its servants, was an active participant in the wrong, and it knew, or, from the circumstances, is in law presumed to have known, that its wrong not only endan- gered the property of the street car company but human life. The jury believed that the railroad knew or ought to have known of such a probable consequence. There- fore, it seems that the present demand of the railroad is based upon its own violation of duty. It will not do to say that by reason of the contract it owed no duty to look out for the wire, when it is established as a fact that the position of the wire had been brought to its attention twice before on that morning. Under the former opinion, the law of this case, it owed a duty to look out for the wire, and, from the facts and circumstances in evidence,

the court held that the jury was warranted in believing that it knew of the sagged wire when the derrick collided with it. The assessment by the jury of damages against each also established the fact that the accident would not have happened but for their concurrent negligence. The jury was authorized to find against one to the exclusion of the other if they believed that the negligence of either was the sole cause. In finding a verdict against each of them, although for different amounts, the fact was established that each was primarily responsible although to a different degree of culpability.

As said in the Central of Georgia Railroad Company v. Macon Light Company, *supra:*

"If the jury made a mistake in saying that the railway company's negligence as to the erection, maintenance, and inspection of the wires was the direct and proximate cause of the decedent's death, and held that company liable, then the error of the jury, and not the act of the present defendant, has caused the present plaintiff the loss sued for, namely, the amount expended in paying off the judgment in the former suit."

The case of City of Louisville v. Louisville R. Co., 156 Ky., 141; 160 S. W., 771, is instructive and in point.

Having reached the conclusion that the parties are in *pari delicto,* and that the case is one where their joint tort resulted in injury to another, it follows that neither has a valid claim upon the other for contribution, and, therefore, the judgment of the lower court should be reversed, and it is so ordered with directions to dismiss.

Whole court sitting.