No. 10,076.

COLORADO & SOUTHERN RAILWAY CO. *v.* WESTERN LIGHT & POWER CO.

Decided March 5, 1923.   Rehearing denied April 2, 1923.

Action for indemnity for damages paid.   Judgment for plaintiff.

*Affirmed.*

1.  COURT OPINIONS—*Interpretation.*   It is almost the universal rule that general statements in an opinion are to be interpreted in the light of the particular facts of the case in which they are made.

2. LEGAL PRECEDENTS—*U. S. Supreme Court Decisions.* The Colorado Supreme Court is committed to the custom and practice of following the lead of the United States Supreme Court on a point of general law.

3. INDEMNITY—*General Rule—Exception.* It is the general rule that one wrongdoer may not recover over of indemnity or contribution from another wrongdoer, but to this rule there is the recognized exception, that when the party who is in fault as to the person injured is without fault as to the party whose actual negligence is the cause of the injury, recovery over may be had.

4. PERSONAL INJURIES—*Negligence—Liability of Defendants.* In an action for personal injuries against two defendants, it is not material to plaintiff's recovery to show whether one or the other of the defendants, as between themselves, was the sole cause of the injury. Even if one was guilty of only the slightest negligence and the other of criminal negligence, the plaintiff would be entitled to a verdict against both.

5. RES JUDICATA—*Estoppel.* Where in a personal injury case, two defendants were found guilty of negligence, in an action by the one who paid the judgment, against the other for indemnity, the question as to the negligence of which defendant was the primary, sole and proximate cause of the injury, will not be deemed to have been adjudicated unless it appears that such issue was submitted and actually determined in the original proceeding.

6. PERSONAL INJURIES—*Negligence—Two Defendants.* In a personal injury action against two defendants, the court properly refused to submit to the jury the question as to which defendant, if either, as between themselves, was primarily liable, in the absence of a permissive statute, or consent of plaintiff to such submission.

7. INDEMNITY—*Contract.* An indemnity contract construed and held not a defense to an action for indemnity, in view of the facts of the case under consideration.

8. LAST CLEAR CHANCE—*When Applicable.* The doctrine of last clear chance applies in a personal injury case only where the plaintiff or the party injured is himself guilty of negligence, or negligence may be imputed to him.

9. APPEAL AND ERROR—*Sufficiency of Evidence.* Evidence in an action by one defendant against another in a personal injuries case, for contribution, reviewed, and held sufficient to sustain

the jury findings that the plaintiff's negligence did not contribute to the accident, and that the defendant's negligence was the sole cause thereof.

10.        *Evidence.*  Where evidence is admitted on rebuttal of precisely the same character as testimony introduced by defendant, the defendant is estopped to deny the materiality of such rebuttal evidence.

11. INSTRUCTIONS—*Indemnity.*  Instructions in an action for indemnity by one defendant against another for a judgment paid in a personal injuries case reviewed and held, if containing error, not to be prejudicial to the rights of plaintiff in error.

12. LAST CLEAR CHANCE—*When Applicable.*  In Colorado the doctrine of last clear chance is applicable not only to discovered peril, but to such as might have been discovered by the exercise of ordinary care.

*Error to the District Court of Boulder County, Hon. Neil F. Graham, Judge.*

Mr. E. E. WHITTED, Mr. J. L. RICE, Mr. J. Q. DIER, for plaintiff in error.

Mr. PAUL W. LEE, Mr GEORGE H. SHAW, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE Western Light & Power Company, having been compelled to pay a joint judgment of $10,000 rendered against it and the Colorado & Southern Railway Company by the district court of Boulder county in an action by Edward Hoyle against both of them, wherein the complaint charged each of them with separate acts of negli- gence which resulted in a collision of the railway company's coal train with the power company's street car at the intersection of their tracks in Boulder, Colorado, and caused the death of Hoyle's wife and daughter, who were passengers in the street car at the time, thereupon brought the present action against the railway company to recover indemnity in the amount paid in satisfaction of the joint

judgment and, in a separate count, or cause of action of the complaint, for the destruction of its street car. In a trial before a jury there was a general verdict for the plaintiff on both causes of action, and the judgment upon this verdict is brought here for review by the defendant.

The theory of the plaintiff power company is, that though the unreversed Hoyle judgment is conclusive that each of the defendants was guilty of negligence that contributed to the accident, yet, as between themselves, there was not, and upon that record there could not have been, a determination as to which of them, if either, was solely and primarily its producing cause; therefore, if, as alleged in the complaint here, and as found by the jury at the trial, the collision which resulted in the death of the injured parties in the Hoyle case, was primarily, solely and proximately caused by acts of negligence of the railway company, positive, active and subsequent in time to the merely passive, negative and antecedent negligence of the power company, that the negligence of the wrongdoers was different in kind and the power company less culpable than the railway company, which had the last clear chance, but failed to avail itself thereof, to avoid the accident, the case falls within an exception, or is not subject, to the general rule that contribution or indemnity may not be had by one joint wrongdoer of another for an injury done by their concurrent acts.

The contention of the defendant railway company as shown by the several defenses of its answer in which the points are appropriately made, are: General denial, negligence, and contributory negligence of plaintiff; that plaintiff, and not defendant, had the last clear chance to avoid the collision and failed; that in the Hoyle personal injury case, plaintiff power company was adjudged guilty of negligence proximately contributing to the accident resulting in the death of the passengers, and that question was not, and is not, open to review or consideration in this case; and if the verdict established such negligence, this operates as a bar or estoppel on the power company to

claim either indemnity or contribution in this or any other action, and upon the same principle the estoppel applies to the recovery of damages asked in the second cause of action for destruction of the street car; that by the terms of an indemnity contract between the parties, the same operates as a bar to both causes of action in the complaint.

These objections, which appear in appropriate separate defenses of the answer, and the errors assigned to rulings of the court during the trial; refusal to order a non-suit, and to direct a verdict for the defendant, the adverse rulings on defendant's objection to testimony, and to the instructions given, fairly present questions for our determination.

The foregoing statement shows that plaintiff, to escape the general rule, alleges facts which it says brings the case within the exception. There is no question as to the general rule, which prevents one wrongdoer from recovery over of indemnity or contribution from another wrongdoer. The parties are in accord as to that, but disagree about the exceptions. The difficulty, we think, is not so much in stating the correct rule or principle of law applicable to indemnity or contribution as in applying it to the particular facts. If, therefore, neither the former judgment in the Hoyle case, nor the indemnity contract, is a bar to this action, and if the court committed no error in its rulings during the trial, or in its instructions, the judgment here should be affirmed if the exception exists and the case, as made, falls within it.

We shall first discuss the two pleas of estoppel, separately pleaded; the one, based upon the former Hoyle judgment, the other, upon the indemnity contract.

The first really involves two propositions: "One, whether there is an exception, as asserted by plaintiff, to the general rule; the other, the effect of the former Hoyle judgment, if the exception exists.

As to the first proposition, the authorities, if not in real, are in apparent, conflict. To attempt a reconciliation would be fruitless. In a recent case, *Ellis v. The C.*

& N. W. Ry. Co., 167 Wis. 392, 167 N. W. 1048, the court declared that one of two wrongdoers may, in a proper case, like the one before it, have contribution from the other. In the opinion is a spirited review of some leading English and American cases. The action there was for contribution. While indemnity may not in all respects be subject to the same rules, what is stated in the opinion applies equally to both kinds of redress. After adverting to the general rule, the opinion states the exception which we think controls the present case. The Wisconsin court said that in England the rule against redress "is confined to cases where the person seeking redress must be presumed to know that he was doing an unlawful act." In other cases, where there is no willful or conscious wrong, redress may be allowed. In the American authorities the court said there is a lack of harmony. Some of the courts, in some of the cases, declare the general rule and apparently without an exception, and in other cases, in the same court, an exception is recognized in cases like that before us, which some courts, as in New Hampshire, say is not an exception to, but that cases ordinarily designated as an exception do not fall within the rule. Possibly some of the apparently inconsistent statements in the opinions may be reconciled by applying the almost universal rule that general statements in an opinion are to be interpreted in the light of the particular facts of the case in which they are made. Even so, it would seem that the doctrine is not uniform.

In the Ellis case, *supra,* the court referred to the *Union Stock Yards Co. v. C. B. & Q. R. R. Co.,* 196 U. S. 217, 224, 227, 25 Sup. Ct. 226, 49 L. Ed. 453, 2 Ann. Cas. 525, an indemnity suit, which was there, as here, strongly relied upon as against redress by way of indemnity or contribution. There the Wisconsin court said that the facts in the Stock Yards Case were quite different from the facts then before the court, but if they could not be distinguished, which the court thought doubtful, the federal decision would not be followed. As the Stock Yards Case

is, perhaps, most strongly relied upon here by the defendant, as it was in the Wisconsin case by the party holding the same view, and as this court is committed to the custom and practice of following the lead of the United States Supreme Court on a point of general law, a study of that case is well worth while, particularly as it is so essentially different in its facts from the facts we have before us, that this difference brings our case clearly within the exception to the general rule which the Federal court recognizes.

The railway company, which received a freight car from its owner in bad condition, turned it over to the stockyards or terminal company in the same defective condition. Neither company made any inspection of the car. An employe of the terminal company was injured by reason of its defective condition, which even a slight inspection by either company would have revealed. An employe, Goodman, sued the terminal company, his employer, on the ground of its negligence in not discharging its duty to him of inspecting the car, and recovered a judgment which the terminal company was compelled to pay, and thereupon brought suit for indemnity against the railway company for its failure to inspect. The Supreme Court of the United States held that because the negligence of the two wrongdoers was of the same character, namely, failure of the duty of inspection, and, therefore, each wrongdoer was equally guilty in kind, that case fell within the general rule which precludes recovery over by one joint wrongdoer against another where the former is compelled to pay a joint judgment against them for separate acts of negligence which contribute to the injury. But the court said, and in its statement the difference between that and this case clearly appears:

"In many instances, however, cases have been taken out of this general rule, and it has been held inoperative in order that the ultimate loss may be visited upon the principal wrongdoer, who is made to respond for all the damages, where one less culpable, although legally liable

to· third persons, may escape the payment of damages assessed against him by putting the ultimate loss upon the one principally responsible for the injury done. These cases have, perhaps, their principal illustration in that class wherein municipalities have been held responsible for injuries to persons lawfully using the streets in a city, because of defects in the streets or sidewalks caused by the negligence or active fault of a property owner. In such cases, where the municipality has been called upon to respond because of its legal duty to keep public highways open and free from nuisances, a recovery over has been permitted for indemnity against the property owner, the principal wrongdoer, whose negligence was the real cause of the injury."

Among the class of cases falling within the exception are cited: *Washington G. L. Co. v. Dist. of Columbia,* 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712; *Oceanic Steam N. Co. v. Compania Trans. E. Co.,* 134 N. Y. 461, 31 N E. 987, 30 Am. St. Rep. 685; *Gray v. Boston G. L. Co.,* 114 Mass. 149, 19 Am. Rep. 324.

The court said other cases to the same effect might be cited. Its conclusion was that since the railway company was bound to use reasonable diligence to see that the cars were turned over to the terminal company in good condition, and the terminal company owed a similar duty 'to its employes, and that both companies neglected to perform the same, the case stood in this wise:

"The railroad company and the terminal company have been guilty of a like neglect of duty in failing to properly inspect the car before putting it in use by those who might be injured thereby. * * * In the present case the negligence of the parties has been of the same character. Both the railroad company and the terminal company failed by proper inspection to discover the defective brake." And for that reason the court said: "We do not think the case comes within that exceptional class which permits one wrongdoer who has been mulcted ·in damages to recover indemnity or contribution from another."

It would be difficult to employ language which more clearly than do the foregoing excerpts, differentiates the Stock Yards case from the instant case. There is nothing decided in the Stock Yards case that is contrary to, but that decision is in full harmony with, our conclusion that an exception to the general rule exists and the case, as made by the complaint and evidence here, falls within it.

Other cases in line with our conclusion are the following: *City of Weatherford W. L. & I. Co. v. Veit* (Tex.), 196 S. W. 986, the opinion being an exhaustive discussion of the subject. See, also, 20 R. C. L. 138, to the effect that right to indemnity presupposes actionable negligence of both parties, toward a third party; *Hudson V. R. Co. v. Mechanicville E. L. & G. Co.*, 180 App. Div. N. Y. 86, 167 N. Y. Supp. 428, and *Central of Ga. Ry. Co. v. Macon Ry. Co.*, 140 Ga. 309, 78 S. E. 931, in which the court recognizes the exception to the general rule, although some earlier and later Georgia cases, which fall within the general rule, apparently disregard the exception.

*Tacoma v. Bonnell*, 65 Wash. 505, 118 Pac. 642, reported in 36 L. R. A. (N. S.) at page 582, (Ann. Cas. 1913B, 934), recognizes the exception to the general rule, and in the note beginning at page 585, is an instructive discussion of the exception we are considering, where a number of the cases are collated.

In *N. I. & S. Co. v. W. & N. R. Co.*, 62 N. H. 159, the exception was recognized and the doctrine of last clear chance enforced just as has been done by the trial court in the instant case. This is one of the leading and best reasoned cases. See also *B. & M. R. Co. v. Brackett*, 71 N. H. 494 (53 Atl. 304), at page 497, where the doctrine is thus concisely stated:

"It is only when the party who is in fault as to the person injured is without fault as to the party whose actual negligence is the cause of the injury, that recovery over can be had." *Austin El. Ry. Co. v. Faust* (63 Tex. Civ. App. 91) 133 S. W. 449; *Knippenberg v. Lord & Taylor*, 193 App. Div. 753, 184 N. Y. Supp. 785; *Gray v.*

*Boston Gaslight Co., supra; Scott v. Curtis,* 195 N. Y. 424, 88 N. E. 794, 40 L. R. A. (N. S.) 1147, 133 Am. St. Rep. 811; *Fidelity & Casualty Co. v. N. W. Tel. Co.,* 140 Minn. 229, 167 N. W. 800; *Old Colony R. v. Slavens,* 148 Mass. 363, 19 N. E. 372, 12 Am. St. Rep. 558; *Penn. Steel Co. v. Wash. & B. B. Co.* (D. C.) 194 Fed. 1011; *Pullman Co. v. Hoyle,* 52 Tex. Civ. App. 534, 115 S. W. 315; *M. K. & T. Ry. Co. v. Maxwell* (Tex. Civ. App.) 130 S. W. 722; 104 Tex. 632, 143 S. W. 1147.

Some of the authorities relied upon by the defendant, in addition to the Stock Yards case are: 6 R. C. L. p. 1056, § 17; 13 C. J. pp. 828, 830; 14 R. C. L. pp. 52, 53. § 10; 22 Cyc. 99; *Gregg v. Page Belt. Co.,* 69 N. H. 247, 46 Atl. 26; *Louisville v. Louisville Ry. Co.,* 156 Ky. 141, 160 S. W. 771, 49 L. R. A. (N. S.) 350; *Cincinnati Ry. Co. v. Louisville R. R. Co.,* 97 Ky. 128, 30 S. W. 408, 17 Ky. Law Rep. 21; *Owensboro v. Louisville, etc., Co.,* 165 Ky. 683, 178 S. W. 1043; *Cumberland T. & T. Co. v. Mayfield W. & L. Co.,* 166 Ky. 429, 179 S. W. 388; *Ill. C. R. R. Co. v. Louisville Bridge Co.,* 171 Ky. 445, 188 S. W. 476; *Cent. of Ga. Ry. Co. v. Swift Co.,* 23 Ga. App. 346, 98 S. E. 256; *Cent. of Ga. Ry. Co. v. Macon Ry. & Light Co.,* 9 Ga. App. 628, 71 S. E. 1076; *City of Puyallup v. Vergowe,* 95 Wash. 320, 163 Pac. 779; *Seattle v. Peterson,* 99 Wash. 533, 170 Pac. 140; *Doles v. Seaboard Air Line Ry. Co.,* 160 N. C. 318, 75 S. E. 722, 42 L. R. A. (N. S.) 67; *Boott Mills v. B. & M. R. R.,* 218 Mass. 582, 106 N. E. 680; *Dow v. Sunset Tel. Co.,* 162 Cal. 136, 121 Pac. 379; *Erie County E. Co. v. Mutual Tel. Co.,* 265 Pa. 181, 108 Atl. 524; *Village of Portland v. Citizens' Tel. Co.,* 206 Mich. 632, 173 N. W. 382.

We do not pause to review these cases but a careful examination of them reveals that most of them are essentially different from the facts of the instant case, and while some apparently hold that there is no exception to the general rule, and the statements of that character are, under the facts of those cases, sufficiently accurate, yet in our opinion cases of the character of the instant case,

either are not subject to the rule at all, or fall within the well recognized exception.

We pass then to a consideration of the second proposition as to the effect of the judgment in the Hoyle case. The defendant, with ability and plausibility, argues that since the Hoyle judgment conclusively established that the negligence of the power company contributed to the death of the passengers, such issue may not again be litigated in this, or any other, action, and if the verdict of the jury in that case so found, it operates as a bar or estoppel on the power company to maintain this action.  If we are right in our conclusion as to the first proposition, the defendant is manifestly wrong, not in its statement that plaintiff's negligence was conclusively established in the former case, but in its conclusion that such determination is a bar to recovery of indemnity here.  But the defendant insists that where, as here, there was a general verdict for plaintiff and against defendant, the rule is that the verdict imports a finding in favor of plaintiff on all averments of the complaint material to his recovery.  *Koskela v. Albion Lumber Co.,* 25 Cal. App. 12, 142 Pac. 851, or as expressed in *Spokane & I. E. R. R. Co. v. Campbell,* 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125, the verdict must be taken as establishing every fact in issue "not eliminated by the instructions of the trial court, that may be necessary to sustain the recovery."  The same principle is announced by this court in *Halbouer v. Cuenin,* 45 Colo. 507, 511, 101 Pac. 763, and *Sheer v. Zollverein M. & L. Co.,* 48 Colo. 350, 109 Pac. 862.  Other cases cited announce the same rule and there is no question as to its soundness, but it is wholly inapplicable here.  It was not material to the plaintiff's recovery in the Hoyle suit to show whether the power company or the railway company, as between themselves, was the sole cause of the accident.  Even though the one was guilty of only the slightest negligence, and the other of criminal negligence, the plaintiff Hoyle was entitled to a verdict against both of them.

There is a further reason for declaring defendant's con-

tention in this respect untenable. In 23 Cyc., 1279, 1280, is a concise statement of the rule as to the effect of a former judgment as between coplaintiffs and codefendants. A judgment "is conclusive upon all parties to the action, * * * yet the estoppel is raised only between those who were adverse parties in the former suit, so that the judgment therein settles nothing as to the relative rights or liabilities of the coplaintiffs or codefendants *inter sese,* unless their conflicting or hostile claims were brought into issue by cross petitions or separate and adversary answers, and were thereupon actually litigated and adjudicated." The citation of this authority was made by the defendant itself. In its answer here, and as a separate defense, the defendant has set forth *in extenso* the entire record proper in the Hoyle case containing all the pleadings, instructions requested and refused, the instructions given, the verdict and judgment, and the various rulings of the court. It does appear therefrom that each defendant, in its separate answer to the complaint, sought to cast the entire blame for the accident on the other, and each one tendered an instruction concerning the doctrine of last clear chance by which an attempt was made to have this issue passed upon by the jury, that is, which of the defendants, if either, as between themselves, was primarily liable. The court, however, refused these tendered instructions and rightly held that in the absence of permissive statute —which statute Texas has enacted—such an issue could not be tried in such a case without the consent of the plaintiff, which was not given. The court gave as a good reason that the plaintiff is not concerned in such a controversy between the defendants, and the doctrine of last clear chance applies in a personal injury case only where the plaintiff or the party injured is himself guilty of negligence, or negligence may be imputed to him. See the Veit case, *supra.* There was no charge in the pleadings or claim made, and no evidence produced that the wife or daughter of Hoyle was guilty of contributory negligence, and the power company's negligence could not be imputed

to its passengers. *Denver Tram. Co. v. Orbach,* 64 Colo.
511, 172 Pac. 1063. But defendant, admitting, as it must,
that the trial court in the Hoyle case, refused such last
chance instructions, insists that other instructions given
by the court of its own motion, submitted this issue to the
jury. We have examined with care the instructions which
the defendant says are of this character. They do not
submit this issue. The most that can be said of them is
that in effect, they went only to the extent of telling the
jury that if either defendant was guilty of negligence that
proximately contributed to the accident, it was liable to
the plaintiff; but if one defendant was, and the other de-
fendant was not, guilty, judgment might go against the
former and in favor of the latter. This falls far short of
saying that if one of the defendants had the last clear
chance of avoiding the accident and failed to take it, he
alone is liable and the other is not. The jury's general
verdict against both defendants negatives the contention
that the issue, as between them, was determined in favor
of the one as against the other; for, if that determination,
as between the defendants, was actually made, the judg-
ment would have been in favor of one, and against the
other, defendant. If the trial judge supposed he was sub-
mitting the issue of "last clear chance" to the jury he
certainly would have given a form of verdict appropriate
to that issue. No such form was given, and neither party
asked for or tendered one. It is obvious that both parties
treated the refusal to instruct as to "last clear chance" as
an elimination of that issue. A like examination of the
record affirmatively shows, both expressly by the court's
refusal of the tendered instructions in their entirety, and
the necessary implication of the court's charge as a whole,
that the court did not intend to, and did not, submit, but,
on the contrary, withheld from the jury the very issues
which were presented by the pleadings and adjudicated in
the present action. The claim by the defendant that the
Hoyle judgment is *res judicata,* is affirmatively dis-
proved by the record which the defendant itself pleaded

in one of its defenses.  The issues then, as between defendants, presented in this action, were not adjudicated in the former one.  Still defendant further insists that plaintiff's demurrer to the second defense of the answer so alleging, was improperly sustained because defendant was thereby precluded from introducing oral evidence showing the identity of the issues in the two cases.  It is sufficient answer to say that the defense as pleaded, alleges that the identity appears from the record itself and nothing is stated in the plea which indicates that there was, or is, parol testimony, or any kind of evidence other than the record itself, to show this identity.  Moreover, while oral testimony is competent in such cases, it is so, provided the record itself is not clear on the subject.  If the record, as this one does, affirmatively shows that the issue submitted here was not adjudicated there, oral testimony to contradict the record cannot be received.  A case quite in point is *Fulton County G. & E. Co. v. Hudson River T. Co.,* 200 N. Y. 287 (93 N. E. 1052), at page 297, where the court says:  "If it is not clear from the record therein upon what ground damages were recovered against the plaintiff here, parol evidence is admissible to show what questions were actually litigated and decided."  *Bijou Irri. Dist. v. Weldon Valley D. Co.,* 67 Colo. 336, 341, 342, 184 Pac. 382, says that if the record does not show what issue was determined in the first action, extrinsic evidence is admissible.  The contrary must be true, if the record clearly, and, as here, affirmatively shows that the issues submitted in the present action were not litigated or determined in the former action, oral evidence to contradict the record is not admissible.

There is no controversy between the parties here as to the general effect of a prior judgment as a bar or estoppel as between the parties and their privies.  In the Bijou Irri. Dist. case, *supra,* is a good statement of the rule.  The error of defendant here consists in the unjustified assumption, which the record in the former Hoyle action contradicts, that the same parties here were parties

to the Hoyle action, and that the same issues were determined there. It is true that the defendants themselves in that action attempted to have that issue determined, but the court withdrew such issue from the consideration of the jury, as already stated. The fact that the parties attempted to have it tried is immaterial, if the court, as a matter of fact, did not permit it to be determined. The record clearly shows that this issue was not determined, and there was no error in overruling the plaintiff's demurrer to the second defense of the answer.

The second plea of estoppel is the indemnity contract. The clause of that contract which the defendant says, in any event, bars a recovery here, is found in the general statement of the facts elicited at the trial of this action which is found in a later place of this opinion. From that statement it will appear that the indemnity agreement was to save the defendant railway company harmless from all claims for damages to persons and property resulting from failure of the employes of the plaintiff power company to use due care in respect to the operation of its street cars over this crossing. Much argument is made by counsel for defendant as to the consideration of this contract, and that it is competent for the railway company to enter into a lawful contract with the owner of the street car system to save it, the railway company, harmless from damages caused by its own negligence and that of its employes. All this argument is irrelevant. It is true that objections of the character indicated were made by the power company to the introduction of the contract, but the court resolved them against the power company and in favor of the railway company and admitted the contract in evidence. The reason that this indemnity contract does not operate as a bar is that the verdict of the jury, under the instructions of the court, settled the issue conclusively that the power company and its agents were not, as between them and the railway company and its employes, guilty of any negligence whatever that contributed to the injury, but that the injuries to the two passengers on the

street car resulted, not from the failure of the employes of the power company to observe due care in moving its car upon this occasion, but solely and proximately from the negligence of the employes of the railway company. The defendant has either misconceived or mis-stated the meaning of this indemnity contract. It has no application in this case. The indemnity provided was, not for injuries which the railway company caused by its own negligence, or that of its employes, but for injuries which were caused by negligence of the power company and its employes. The very object of this action was to ascertain which defendant was primarily liable. The jury has said the railway company, not the power company, was the guilty party.

Having thus shown, as we think, that the case as made in the complaint, states a good cause of action, and falls within the exception to the general rule relied upon therein, or that the case made is not subject thereto, and that neither of the pleas of estoppel constitutes a bar, we pass to a consideration of what may be called minor questions raised in the defendant's assignments to various rulings of the court made during the course of the trial.

A general statement of the facts of the case might well have been made at an earlier stage in the opinion. But as the errors assigned to rulings made during the progress of the trial, are more closely connected with these facts than are the major questions heretofore considered, we have reserved this statement for insertion immediately preceding the discussion of these minor questions. Some of the material facts are not controverted. These, and additional facts, to which there was evidence and which the jury found, are that the plaintiff power company owns and operates a street railway in the City of Boulder, Colorado. One of its tracks runs northerly and southerly along the center line of Twelfth street. The defendant railway company owns and operates a steam railroad system, whose track, running easterly and westerly, intersects the street car track in the middle of Twelfth street. At the

point of intersection, trains of the defendant railway company going westerly run on a descending grade of approximately 2%, and street cars of the plaintiff power company, going southerly, on an ascending grade of about 6%. The railroad track was first laid and when the street car track of the plaintiff was built, the defendant railway company and a Mr. Duncan, to whose rights and liabilities thereunder we shall assume with defendant the plaintiff power company has succeeded, entered into an elaborate contract by which, among other things, the railway company gave its consent that its track might be crossed by the street car track. In the twelfth clause of this contract preferential right in the operation of the respective systems was given to the steam railroad at this point of intersection, both for its passenger and freight trains, and the power company was required to, and did, carry on each of its cars a flagman and a motorman, the duty of the former being to alight at a certain point when approaching the crossing and go ahead to scan the railway tracks of the defendant for approaching engines and cars, and then to give to the motorman, whose duty it was to bring his car to a dead stop before entering upon the crossing the appropriate proceed or detain signal. The concluding sentence of this preferential clause, whose inapplicability here we have hereinabove determined, is: "And the party of the second part, (plaintiff power company), agrees to save the party of the first part, (defendant railway company), harmless from all claims for damages to persons and property resulting from failure of the employes of the party of the second part, (plaintiff power company), to use due care in this respect." Other provisions of the contract are not important.

In November, 1916, Anna Hoyle and her daughter, Hazel, were passengers on plaintiff's street car, going south. On arriving at this crossing a collision occurred between the street car and a freight train going westerly, consisting of a locomotive and twenty-one cars filled with coal, backing, that is, with the tender ahead of the engine,

at a rate of speed of about 10 miles an hour, whereby the
street car, then on the crossing, was struck by the engine
and wrecked and the two passengers were killed. There-
after Edward Hoyle, the husband of Anna, and father
of Hazel, brought an action in the district court of Boulder
county against both the power company and the railway
company for their separate and concurrent acts of negli-
gence which caused the death of the injured parties, and
recovered a judgment in the sum of $10,000, which the
plaintiff power company was compelled to pay. In sub-
stance, the charges of negligence in the complaint in that
action against the power company were, its neglect to
make adequate provisions for safeguarding the crossing,
and the failure of its motorman and flagman to take
proper precautions before crossing the track to ascer-
tain if any train or engine of the defendant railway
company was approaching, and for not coming to a dead
stop before entering upon the crossing. The charges
against the railway company were, among others, that
it failed to keep in working order its automatic wig-
wag erected at this crossing, which was designed to give
warning of approaching trains; to ring the bell or sound
the whistle of the engine; to safeguard the crossing by
having a temporary or permanent flagman; running at an
excessive rate of speed, 10 miles an hour, the city ordi-
nance prohibiting a greater speed than 6 miles an hour;
in backing its engine and train without sufficient headlight
on the tender; in not stopping its train before the collision.

The night was dark and rainy. Plaintiff's street car
was slowly moving up the ascending grade, and about 10
feet from the crossing came nearly to a stop—as a witness
said: "As near as it could come to a stop and not stop."
The flagman got off the car and went forward to scan the
railroad track in both directions. He, as well as the motor-
man who remained at his post, neither heard nor saw a
train. The wig-wag was not in motion; there was no
sound of a bell or whistle. Just easterly of the crossing
was a cut in which the railway company maintained two

clusters of electric lights; one about 220 feet, the other about 580 feet east of Twelfth street, 6 lights to a cluster, attached to poles about 20 feet above the defendant's track. These lights were dim and of a reddish cast, and, though higher from the ground, were similar in color to the oil light on the tender of defendant's engine.   The motorman said that the flagman, after scanning the track in both directions, gave the signal to proceed, he, the motorman, having also taken the usual precautions at this crossing, and not being aware of, and there being no indication of, an approaching train, at once started his car forward and when he had got the front end of it about 3 feet over the north rail of the defendant's track, the oil light on the end of the tender, about 50 feet easterly, suddenly flashed in his eyes, whereupon he at once reversed and backed the street car and had gone about one foot when the tender struck the car and killed the passengers.   The flagman, while denying that he gave a proceed signal, testified substantially as the motorman did, as to the negligence of the defendant.    The defendant's fireman, who was on the northerly side of the engine, testified that he first saw the street car moving slowly when the engine was about 85 feet easterly of the crossing, but he supposed it would observe the required and usual practice—come to a full stop before passing over—but when he saw that it suddenly moved forward, then first realizing the danger of a collision, he called at once to the engineer, who was at his post on the other side of the engine, to stop, and the engineer immediately applied the brakes but too late to prevent the disaster.   Other evidence supported the defendant's theory of the case.   There was also evidence tending to show, that, notwithstanding plaintiff's negligence, in putting its street car in a perilous position, the fireman, who was on the lookout, discovered, or by exercising ordinary care, could, and would, have discovered, and so could have avoided, the peril and averted the disaster, but failed in that respect.   Still other evidence, expert and otherwise, tended to show that defendant's train was traveling at an

excessive rate of speed, in violation of a city ordinance, and that if it had conformed to the ordinance, or was running, as some of the evidence was, at a speed of 10 miles an hour, the engine could have been stopped before it reached the sidewalk on the east side of Twelth street, 20 feet from the middle of the street where the car was standing.

To sum up, there was sufficient legal evidence to sustain the jury's findings, under the court's instructions, that the plaintiff's negligence was antecedent, negative and passive, merely producing the occasion or condition, and did not contribute to the accident, and that the defendant's negligence, of a different character, if not willful, was subsequent, active and positive, and the sole cause of the collision.

It is said by the defendant that prejudicial testimony, in behalf of the plaintiff, was admitted over its objection. Two witnesses for plaintiff were permitted to testify that they were familiar with this crossing, had often passed there, and that it was customary for the defendant's trains to run at a speed beyond that fixed by the ordinance, and at a rate of 10 to 15 miles an hour, and they never knew them to slow down or give any whistle or sign in approaching the crossing, and the coal trains usually backed into the City of Boulder. It may be conceded as an abstract proposition, that this testimony was not admissible. It was brought out on rebuttal. The defendant, in making out its defense, had placed a witness upon the stand who testified that the general practice of the railway company in operating its trains over this crossing was uniformly to slow down east of Twelfth street. While it may not be always safe, or a justifiable proceeding, to admit such testimony as the defendant offered in rebuttal, it would seem that the alleged error of the court, in admitting the evidence in rebuttal, was neutralized by previous admission of precisely the same character of adverse testimony offered by the defendant. If the defendant's testimony had not been contradicted, defendant's counsel could well have argued to the jury that, as the practice of the defendant

was uniformly to slow up, and to give the appropriate signals, the jury might well conclude that this tended to show observance of due care at this time by the defendant in these respects.    The defendant, by its own conduct, is estopped to deny the materiality of plaintiff's rebuttal testimony.  *Farmers H. L., etc., Co., v. White,* 32 Colo. 114, 75 Pac. 415; *Denver City Tram. Co. v. Hills,* 50 Colo. 328, 338, 116 Pac. 125, 36 L. R. A. (N. S.) 213; *Bailey v. Carlton,* 43 Colo. 4, 95 Pac. 542; 22 C. J. 195.

We have examined with care the instructions which the respective parties tendered to the court and compared them carefully with the instructions which the court gave. The defendant's criticism of them is not justified.   Complaint is made that the court did not sufficiently point out in its charge what instructions were applicable to the first cause of action, and what to the second.   The court applied the same strictness to the plaintiff's showing under the second cause of action as to its showing in support of the first; that is, the court instructed that, before the plaintiff could recover under either cause of action, it must show not merely that the defendant's negligence contributed to, but that, as between these parties, it was the sole and proximate cause of the collision, and that if the plaintiff did not exercise due care, or was not wholly guiltless of negligence, it could not recover under either cause of action.   How it is possible for the jury to have been confused by such instructions we are unable to discover.

Aside from this, insofar as there may have been any possible obscurity or confusion in the court's instructions, upon any branch of the case, it was the result of the language of the instructions tendered by the defendant and which the court appropriated in its own charge, with the necessary qualifications that the facts and law of the case required.   On the issue, as to the doctrine of last clear chance, plaintiff's criticisms of the instructions given are based largely upon its mistaken supposition that that doctrine applies only in cases where peril has actually been discovered.   Some federal and some state courts thus limit

the application of the doctrine, but since the case of *Denver & Rio Grande R. R. Co. v. Buffehr,* 30 Colo. 27, 69 Pac. 582, this court has consistently applied the doctrine not only to discovered peril, but has extended it to peril that might have been discovered by the exercise of ordinary care. One of our latest cases is *Union Pacific R. R. Co. v. Larson,* 66 Colo. 15, 178 Pac. 573.

In this connection we deem it fitting to say that instructions given by the court evidence careful preparation. They were submitted to counsel before they were read to the jury, both parties taking exception to them, and the court, after a patient hearing and with full opportunity of making corrections, overruled the exceptions and delivered the instructions as prepared. If there are any errors in them, they are not against, but in favor of, the defendant.

This and the Hoyle case were tried in the same court, by the same judge, the same attorneys appearing in both cases. The presiding judge, through arguments on various motions and demurrers to the pleadings, on motions for non-suit and for directed verdict, and by listening to the testimony in the two trials, was well advised, both as to the law and the facts. Full opportunity to counsel to present the cases in their every aspect was afforded and improved. The record justifies the inference that the trial judge was of the opinion that law and justice, as between these two wrongdoers, were with the plaintiff power company. Apparently anticipating that the evidence might be held sufficient by the jury to meet the demands of justice, as he saw it, he might have been, but we do not say that he was, unconsciously led, in some measure, so to shape his instructions and color his rulings as not to furnish the probable defeated party with any valid ground for reversal. However that may be, as we have already said, the power company, not the railway company, if either, is the party which has a grievance. So ably and exhaustively have counsel on both sides, both here and below, presented their views that neither tribunal has any

valid excuse for a wrong decision. We think the judgment below was right. It is affirmed.

MR. JUSTICE DENISON not participating.